OPINION OF THE COURT
Kaye, J.
This appeal calls upon us to determine the effect to be given to the People’s failure, in an arson prosecution, to disclose a report prepared by its explosives expert that had been specifically sought by defendant in his discovery request. More particularly, we must decide whether the standard of United States v Bagley (473 US 667) should be adopted as a matter of State law.
Defendant was convicted of arson in the first degree, attempted arson in the first degree and conspiracy, for having conspired with Ronnie and William Bernacet, Ephraim Flores and Gino Romano to plant and set off one pipe bomb below a *70 pizzeria on Nostrand Avenue in Brooklyn, and a second below a nearby laundromat. The first bomb did not explode. It was the People’s theory, however, that the bomb planted in the laundromat basement had exploded as planned, and thus the defendants were charged with arson in the first degree, as well as attempt. Damage caused by an explosion is an element of arson in the first degree (Penal Law § 150.20 [1]).
The Bernacet brothers — who unlike defendant had made fairly extensive inculpatory statements — were tried first, on the same charges on which defendant was later tried. Among the prosecution witnesses was Officer Daniel Kiely, a member of the Bomb Squad, who had inspected the laundromat basement the day after the alleged explosion. At the Bernacets’ trial, Kiely was cross-examined at length about a report he wrote the day after the incident, in which he stated that a thorough inspection of the basement revealed no evidence that there had been an explosion, but asked that the case be kept open. Although Kiely testified that he ultimately concluded (in light of reinspection of the premises a year later) that there had been an explosion, defense counsel in summation argued that there was insufficient proof of the explosion element of first degree arson, based on Kiely’s first report. The Bernacet brothers were acquitted of the completed arson (see, People v Bernacet, 108 AD2d 921, lv denied 65 NY2d 813; People v Bernacet, 112 AD2d 942, lv denied 66 NY2d 1037).
Before defendant’s trial, counsel made a pretrial request for all reports "by ballistics, firearm and explosive experts” concerning the laundromat explosion. The prosecutor — not the same Assistant District Attorney who tried the Bernacets— sent him 12 reports, not including Officer Kiely’s first report. At trial, no questions about that first report were asked during the brief cross-examination of Kiely, and no effort was made to argue that the People had failed to establish the explosion element of the top count. The sole defense was that the police informant who provided much of the evidence against defendant was too unsavory to be credited. Police officers and the informant Francisco Martinez — who was hired by the defendant and the Bernacets to help carry out the bombings — testified that Martinez was reporting to the police from the outset, and a taped conversation between defendant and Martinez concerning the bombings was introduced into evidence. Defendant was convicted on all counts.
While preparing defendant’s appeal, appellate counsel re *71 viewed the transcript of the Bernacets’ trial, and realized that there was an undisclosed explosives report. Defendant made a motion to vacate the judgment of conviction, pursuant to CPL 440.10, arguing both that the undisclosed report was Brady material (and failure to disclose violated his due process rights under the State and Federal Constitutions) and that his trial counsel had been ineffective. The People responded that nondisclosure did not require reversal, as there was overwhelming evidence of defendant’s guilt, including Officer Kiely’s ultimate conclusion that the laundromat bomb had indeed caused an explosion and testimony by residents of the building that there had been a "bang” and that the building had shaken. The District Attorney also noted that there was an issue as to whether the substance of the report, even if exculpatory, had been withheld.
The trial court summarily denied defendant’s motion, holding that the Brady claim should have been raised on direct appeal and that defendant had received the effective assistance of counsel. The Appellate Division modified. Although it too found no merit in the ineffective assistance claim, the court rejected the District Attorney’s remaining contentions, as do we.
The Appellate Division concluded that defendant’s Brady claim was properly raised pursuant to CPL 440.10, and granted defendant’s motion to the extent of vacating his conviction of arson in the first degree. Distinguishing this case —in which counsel had specifically sought the undisclosed report — from a case in which no specific request had been made, the Appellate Division held that the report was exculpatory, that the prosecution violated the defendant’s constitutional right to be informed of exculpatory information known to the State, and that reversal was required "if there is a reasonable possibility that [the undisclosed material] contributed to the defendant’s conviction.” (150 AD2d 819, 820.) Concluding that the People had not met that standard, the Appellate Division ordered a new trial on the completed arson charge to which the exculpatory material was relevant. We now affirm.
Analysis
On appeal, the People contend that the standard applied by the Appellate Division was erroneous. Noting that the Supreme Court has recently articulated a single standard for *72 determination of when a prosecutor’s failure to disclose evidence favorable to the defendant requires reversal (see, United States v Bagley, 473 US 667, supra), the People argue that this court adopted that standard in People v Chin (67 NY2d 22). Thus, the People reason, the Appellate Division should have applied the Bagley standard: that failure to disclose favorable evidence is "constitutional error * * * only if the evidence [was] material in the sense that * * * there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different” (United States v Bagley, 473 US, at 678, 682, supra [emphasis added]). The Appellate Division’s assessment, according to the People, was improperly based on a "reasonable possibility” standard more favorable to defendant, as there is no longer any distinction between cases in which a specific request has been made for undisclosed Brady material and those in which it has not.
Contrary to the People’s claim, this court has not yet had occasion to consider, under State law, whether to adopt Bagley’s broad formulation of the materiality standard in the context of a case where the prosecutor has failed to turn over particular exculpatory evidence, despite the fact that defendant has requested disclosure of that very evidence. People v Chin was not such a case. As is made plain in the Chin opinion, the claimed Brady material was not exculpatory evidence; no demand had been made for it; and the People had no knowledge of it before trial (People v Chin, 67 NY2d, at 33, supra; see also, People v Brown, 67 NY2d 555, 559, cert denied 479 US 1093). In this case, by contrast, the withheld report is plainly exculpatory, as it suggests there was no evidence of a crucial element of the first degree arson charge; there is no dispute that the report was in the People’s possession; and defendant specifically sought discovery of the very material involved here — reports of explosives experts.
Thus, unlike Chin, this case does require us to decide whether Bagley should be adopted as a matter of State law.[1]
*73 I.
Federal constitutional law concerning the People’s failure to disclose exculpatory evidence originated in a series of cases involving the prosecution’s knowing use of perjured testimony (see, United States v Bagley, 473 US, at 679, n 8, supra [discussing cases]).
In Brady v Maryland (373 US 83), decided nearly 30 years ago, the Supreme Court established, as a matter of Federal constitutional law, that the prosecution’s failure to disclose to the defense evidence in its possession both favorable and material to the defense entitles the defendant to a new trial. Brady itself involved failure to disclose evidence that had been specifically requested by the defense, and the court noted that the nondisclosure was constitutional error if the evidence would "tend to exculpate” the defendant (373 US, at 88, supra).
Following the Brady decision, there was considerable doubt as to whether a specific request for the exculpatory evidence might not be an indispensable element of a Brady claim (see, Comment, Brady v Maryland and the Prosecutor’s Duty to Disclose, 40 U Chi L Rev 112, 115-117 [1972]). It was in response to this doubt that in United States v Agurs (427 US 97), the court created a two-tiered framework for determining whether favorable evidence was "material,” so that the failure to disclose it required a new trial. Evidence specifically requested by the defense was material if it "might have affected the outcome of the trial.” (Id., at 104.)[2] By contrast, in cases where there had been no request, or only a general request for exculpatory material, the prosecution’s duty to disclose arose entirely from the notice provided by the very nature of the evidence, and the standard for a new trial was higher: undisclosed exculpatory evidence was material only if it "create[d] a reasonable doubt that did not otherwise exist.” (427 US, at 112.)
In Agurs, the court reasoned that it was appropriate to impose a lesser burden on the defendant in a "specific request” case because such a request puts the prosecutor on notice that there is particular evidence the defense does not *74 have and believes to be important. By contrast, use of the "might have affected” standard where the prosecutor had been given no such notice might require something close to open file discovery (United States v Agurs, 427 US, at 106-109, supra). As the court noted, "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable” (id., at 106), and this has been read as "reflecting] the view that [in the specific request cases], the prosecutor’s responsibility for any resulting trial deception is clear.” (2 LaFave & Israel, Criminal Law § 19.5, at 538.) This court has likewise found the prosecution’s failure to turn over specifically requested evidence to be "seldom, if ever, excusable” and to verge on prosecutorial misconduct (see, People v Brown, 67 NY2d 555, 559, supra; People v Cwikla, 46 NY2d 434, 441-442).
In Bagley, a deeply divided Supreme Court reconsidered its two-tiered approach, and replaced it with a single standard applicable in all cases. Adopting the very same test it had just formulated in Strickland v Washington (466 US 668) for determining ineffective assistance of counsel claims,[3] the court in Bagley held that undisclosed evidence is material only if there is a "reasonable probability” that it "would” have altered the outcome of the trial; a reasonable probability is "a probability sufficient to undermine confidence in the outcome.” (473 US, at 682.) The court opined that this standard was "sufficiently flexible” to cover both the "specific request” and "no request/general request” cases. Justice Blackmun observed that a prosecutor’s failure to respond to a specific request not only deprives the defense of the exculpatory evidence (as in all Brady cases) but also may have the effect of misleading the defense to conclude that the particular evidence does not exist, and therefore to abandon its investigative and trial efforts in that direction. But he concluded that under the Strickland formulation, any such additional adverse consequences could be taken into consideration by a reviewing court in the totality of the circumstances, and no separate standard was necessary (id., at 682-6S3).[4]
*75 Thus, while continuing to give at least a theoretical preference to specific request cases, the Supreme Court’s new rationale and approach are entirely different from Agurs. Indeed, Justice Stevens, the author of the majority opinion in Agurs, dissented in Bagley on the ground that "[b]ecause this constitutional duty to disclose [in the absence of a request] is different from the duty described in Brady, it is not surprising that we developed a different standard of materiality in the Agurs context.” (473 US, at 711 [Stevens, J., dissenting; emphasis in original].) Rather than giving more serious consideration to specific requests both because of the greater degree of notice they provide, and out of reasons of fairness and prosecutorial misconduct, in Bagley the court jettisoned such considerations in favor of a single standard, which in some undefined measure may — or may not — include adverse consequences in the specific request context. (See, Note, Specific Requests and the Prosecutorial Duty to Disclose Evidence: The Impact of United States v Bagley, 1986 Duke LJ 892.)
From a Federal standard of "seldom, if ever, excusable,” it appears that the prosecution’s failure to turn over specifically requested evidence, under Bagley, will now seldom, if ever, be unexcused.
II.
Over the course of the decades since Brady was decided, the courts of this State, obviously, have had to deal on a practical level with the consequences of a prosecutor’s failure to disclose evidence requested by the defense.
As is the Federal rule of Brady, this court’s analysis of the prosecutor’s duty to disclose exculpatory evidence is rooted in cases dealing with the similar question of knowing prosecutorial use of false and misleading testimony (see, People v Savvides, 1 NY2d 554, 556-557; People v Creasy, 236, NY 205, 221). Notably, these cases even predate the identified Federal progenitors of Brady, and were decided entirely without reference to Federal law, based on our own view of this State’s requirements for a fair trial.
*76 Our own view of important State concerns in this matter has differed significantly from the Supreme Court’s newest interpretation of the dictates of the Federal due process standard.
We have long emphasized that our view of due process in this area is, in large measure, predicated both upon "elemental fairness” to the defendant, and upon concern that the prosecutor’s office discharge its ethical and professional obligations (see, People v Novoa, 70 NY2d 490, 496-499; People v Cwikla, 46 NY2d 434, 441-442, supra; People v Simmons, 36 NY2d 126, 131-132; People v Savvides, 1 NY2d 554, 556-557, supra; People v Creasy, 236 NY 205, 221, supra). Although we have refused, in this context, to adopt a rulé of automatic reversal, we have endorsed the proposition that " 'the strictness of the application of the harmless error standard seems somewhat to vary, and its reciprocal, the required showing of prejudice, to vary inversely, with the degree to which the conduct of the trial has violated basic concepts of fair play.’ ” (People v Fein, 18 NY2d 162, 174, cert denied 385 US 649, reh denied 386 US 978 [citing Kyle v United States, 297 F2d 507, 514].) Indeed, in a related area, we have found our State concerns for fairness and prosecutorial misconduct to be of such paramount importance that we have imposed a rule of automatic reversal for nondisclosure (People v Ranghelle, 69 NY2d 56; People v Perez, 65 NY2d 154).
In accordance with our long-standing State concerns, in cases involving failure to disclose material specifically requested by a defendant, we have described the standard as one premised on Agurs, and that has been understood and cited again and again as the governing standard throughout the State (see, e.g., People v Smith, 63 NY2d 41, 67; People v Porter, 128 AD2d 248, 253-254; People v Velez, 118 AD2d 116, 119-120; People v Pugh, 107 AD2d 521, 530; People v Kitt, 86 AD2d 465, 467; People v Ramos, 146 Misc 2d 168, 171-172 [predicting that this court will retain Agurs and reject Bagley, consistent with its "right sense of justice” sentiment evidenced in the Rosario cases]).[5]
*77 We decline to abandon these accepted principles in order to conform to the lesser protections of Bagley.
III.
We agree with the Appellate Division that a showing of a "reasonable possibility” that the failure to disclose the exculpatory report contributed to the verdict remains the appropriate standard to measure materiality, where the prosecutor was made aware by a specific discovery request that defendant considered the material important to the defense. As we have previously noted (People v Cwikla, 46 NY2d, at 441, supra), suppression, or even negligent failure to disclose, is more serious in the face of a specific request in its potential to undermine the fairness of the trial, and ought to be given more weight than as simply one of a number of discretionary factors to be considered by a reviewing court.
Further, a backward-looking, outcome-oriented standard of review that gives dispositive weight to the strength of the People’s case clearly provides diminished incentive for the prosecutor, in first responding to discovery requests, thoroughly to review files for exculpatory material, or to err on the side of disclosure where exculpatory value is debatable. Where the defense itself has provided specific notice of its interest in particular material, heightened rather than lessened prosecutorial care is appropriate.
The "reasonable possibility” standard applied by the Appellate Division — essentially a reformulation of the "seldom if ever excusable” rule — is a clear rule that properly encourages compliance with these obligations, and we therefore conclude that as a matter of State constitutional law it is preferable to Bagley (see, People v P. J. Video, 68 NY2d 296). Moreover, the Strickland "reasonable probability” standard — which we have chosen not to adopt as a matter of State law despite several invitations to do so — remits the impact of the exculpatory evidence to appellate hindsight, thus significantly diminishing *78 the vital interest this court has long recognized in a decision rendered by a jury whose ability to render that decision is unimpaired by failure to disclose important evidence (see, People v Savvides, 1 NY2d, at 557, supra).
Finally, the new Bagley standard is hardly clear. The Supreme Court itself could not muster a plurality on how the new standard was to be applied to the case before it, and the case has engendered considerable confusion (see, n 4, supra).
For all of these reasons, and not because we "merely * * * disagree[ ] with [the Supreme Court] or dislike[ ] the result reached” (concurring opn, at 80), we choose to adhere to our existing standard as a matter of due process of law under the State Constitution.
IV.
Applying that standard in this case, we agree with the Appellate Division that defendant is entitled to a new trial on the first degree arson charge, as there was at least a reasonable possibility that defendant would not have been convicted on that count had the exculpatory report been available to him at trial. That a contemporaneous and avowedly "thorough” inspection of the bomb site by an expert had led him to conclude that no explosion occurred well might have caused the jury to discount his contrary assertion at trial, which was based on challenged circumstantial evidence and arrived at only after the passage of a year. It is the reasonable possibility that the undisclosed evidence might have led to a trial strategy that resulted in a different outcome (as appears to have happened in the Bernacets’ case) that requires reversal.
Accordingly, the order of the Appellate Division should be affirmed.

. All members of this court agree that Bagley holds that a rule of "reasonable probability” is now to be applicable to all failures to disclose. We agree that this court has previously recognized the rule of reasonable probability to be the holding of Bagley (People v Chin, 67 NY2d 22). And we all agree that this court has not yet chosen to adopt or reject the Bagley rule in the context of specific request cases.

. While the Supreme Court’s use of this phrase in Agurs was apparently not intended as a precise statement of the materiality standard in such cases, courts in specific request cases have generally looked to that language in assessing materiality (see, 2 LaFave & Israel, Criminal Procedure § 19.5, at 539).

. This court has not adopted the Strickland test for determining ineffective assistance of counsel claims (see, e.g., People v Rivera, 71 NY2d 705; People v Benn, 68 NY2d 941).

. While writing for the court, Justice Blackmun was joined in this observation only by Justice O’Connor. Justices White, Burger and Rehnquist saw no need to elaborate on relevance of the specificity of the defense’s *75 request for disclosure. Justices Marshall (joined by Justice Brennan) and Stevens dissented separately; Justice Powell did not participate in the decision. Thus, at least five Justices appear to believe that specific requests should be viewed somewhat differently. As one commentator noted, "[t]he initial lower court response to Bagley has been marked by a good deal of confusion.” (Note, Specific Requests and the Prosecutorial Duty to Disclose Evidence: The Impact of United States v Bagley, 1986 Duke LG 892, 914.)

. As the concurring opinion notes in detail (see, at 85), the cited cases are of course distinguishable, in the sense that the dispositive question was not application of an articulated standard to nondisclosure of specifically requested evidence. That is hardly the point, however. The cited cases manifestly demonstrate that the courts throughout this State have long understood and repeatedly stated that failure to disclose specifically re *77 quested material is subject to a different standard of review than failure to turn over evidence that was not requested. Moreover, contrary to the concurrence’s view, People v Savvides (1 NY2d 554) and People v Creasy (236 NY 205) most certainly do support the claim that New York’s body of law on exculpatory evidence and due process originated independently of Federal law on the subject, and in subsequent cases involving evidence that even the concurrence would concede to be Brady material, we have relied upon these State law cases and discussed their rationale (see, People v Cwikla, 46 NY2d 434, 442; People v Simmons, 36 NY2d 126, 131-132).