■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ASHTON NEDRICK, Appellant.—Appeal by the defendant (1) from a judgment of the Supreme Court, Kings County (Lagana, J.), rendered April 22, 1987, convicting him of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and sentencing him to an indeterminate term of 25 years' to life imprisonment for murder in the second degree, 7½ to 15 years' imprisonment for criminal possession of a weapon in the second degree, to run consecutively to the term of imprisonment for murder in the second degree, and 3½ to 7 years' imprisonment for criminal possession of a weapon in the third degree, to run concurrently to the term of imprisonment for criminal possession of a weapon in the second degree, and (2) by permission, from an order of the same court dated May 25, 1989, which denied his motion to vacate the judgment and sentence pursuant to CPL 440.10 and CPL 440.20.

Ordered that the judgment is modified, on the law, by vacating so much of the sentence as provided that the term of imprisonment imposed for criminal possession of a weapon in the second degree run consecutively to the term of imprisonment imposed for murder in the second degree, and by substituting therefor a provision that those two terms of imprisonment shall run concurrently to each other; as so modified, the judgment is affirmed; and it is further,

Ordered that the order is affirmed.

The chief witness for the prosecution testified that on October 1, 1985, she observed the defendant and the victim en-

gaged in a violent fight, during which both of the combatants were "really trying to hurt each other". She testified that she ran into the lobby of a nearby building, and that while she was there, she heard a gunshot.

The witness testified that she then returned to the street where the defendant and the victim were fighting. She testified that she saw the defendant throw the victim to the ground. She further described how she watched as the defendant stood over his victim, and shot him with a handgun.

The witness further testified that she continued to look on as the wounded victim struggled to get up from the ground and that, just as the victim began to stagger away, she heard the firing of yet another shot. The defendant then fled. The victim later died as the result of injuries caused by one of the two bullets with which he had been struck.

The quantity of proof inculpating the defendant in this crime was overwhelming. The chief witness for the prosecution had seen the defendant in the neighborhood on numerous prior occasions, and knew him by his nickname, "Caesar". She had observed the defendant for a substantial period of time as he approached the victim prior to the eruption of the fight, and had noted that he was wearing a pair of "Cazal" sunglasses. These sunglasses, which fell off during the defendant's altercation with the victim, were recovered from the scene of the crime. An ophthalmologist testified that he had compared the sunglasses found at the scene with a pair of sunglasses obtained from the defendant, and that he had found that the prescriptions of the two pairs of glasses were consistent.

After the defendant had been convicted and sentenced, he made a motion pursuant to CPL 440.10 (1) (h) and CPL 440.20 (1), arguing, among other things, that the prosecution had withheld from the defense certain allegedly exculpatory evidence. The evidence in question consists of an audiotaped interview with the mother of the chief witness, who had also been present at the scene at the time of the shooting. According to the mother's recorded statement, she had heard two shots fired in rapid succession, apparently while she and her daughter were in, or running toward the lobby.

The defendant theorized that this evidence was "exculpatory" because it was inconsistent with the daughter's trial testimony to the effect that the first shot (heard by her while running to the lobby) was not immediately followed by the second shot (seen by her after she had returned to the street). The Supreme Court denied the defendant's postjudgment mo-

tion. A certificate granting leave to appeal to this court from the order denying the motion was subsequently granted by an Associate Justice of this court.

The defendant's first argument on appeal is that the prosecution's "deliberate" withholding of "exculpatory" evidence deprived him of a fair trial (US Const 14th Amend; NY Const, art I, § 6; CPL 240.20 [1] [g]; *Brady v Maryland,* 373 US 83). We reject this argument, because, even assuming that the audiotaped statement made by the witness's mother was "exculpatory", the prosecution's failure to provide it to the defense had no conceivable effect on the jury's verdict.

With respect to so-called *"Brady"* violations, the New York Court of Appeals has adopted the standard of appellate review prescribed by the Supreme Court in *United States v Agurs* (427 US 97) *(see, People v Vilardi,* 76 NY2d 67; *cf., United States v Bagley,* 473 US 667). Pursuant to this standard, the failure to furnish exculpatory information "specifically requested by the defense" *(People v Vilardi, supra,* at 73) will warrant reversal if such failure " 'might have affected the outcome of trial' " *(People v Vilardi, supra,* at 73; *United States v Agurs, supra,* at 104). However, the failure to furnish exculpatory information where only a general request for exculpatory information had been made will not warrant reversal unless there is a reasonable probability that the outcome of the trial was affected *(see, People v Vilardi, supra,* at 73-75; *United States v Agurs, supra,* at 112).

In the present case, the defendant demanded production of any statement made by any person "the prosecution * * * believe[d] to have relevant knowledge". We do not consider this to be the sort of "specific" demand which would have put the prosecutor "on notice that there is particular evidence the defense does not have and believes to be important" *(People v Vilardi, supra,* at 73-74). In other words, in this case "[i]t would be inappropriate to apply the standard which obtains where the prosecutor had notice of exactly what the defense desired and suppressed it" *(People v Smith,* 63 NY2d 41, 67).

Even if we were to apply the more exacting standard of review set forth in the *Vilardi* and *Agurs* cases *(supra),* we would nonetheless conclude that there is no "reasonable possibility" that the failure to disclose the statement by the witness's mother affected the verdict *(see, People v Vilardi,* 76 NY2d 67, *supra).* It bears emphasis that the witness's mother specifically stated in her interview that she did not know who fired the shots which she heard; thus, there is no indication that she would have been able directly to contradict, or for

that matter support, her daughter's in-court identification of "Caesar" (i.e., the defendant) as the shooter. Also, considering that two or more witnesses will inevitably differ with respect to their recollection of the details of any particular event, the fact that the testimony of the witness's mother as to the time of the shots varied from the testimony of the witness can scarcely be viewed as exculpatory to any significant extent. Any *Brady* violation was, in short, harmless *(see, People v Hoover,* 162 AD2d 710; *People v Smith,* 162 AD2d 736).

The defendant also claims that a new trial is necessary because the trial court failed to give a "missing witness" charge as to the witness's mother. Again, we conclude that any error in this respect was harmless. The uncontroverted testimony of an eyewitness who knew the defendant, and who saw him shoot the victim, which was corroborated by the physical evidence left at the scene by the defendant (his sunglasses), constituted overwhelming proof of guilt, so that any error would have to be considered harmless in this case *(see, People v Crimmins,* 36 NY2d 230; *People v Gayle,* 162 AD2d 261; *People v Vasquez,* 150 AD2d 627; *People v Wearing,* 126 AD2d 586).

We have examined the defendant's remaining contentions and find that, with one exception, they are similarly without merit. The single argument which we find to be well founded is the defendant's contention that, as a matter of law, the sentences should run concurrently *(see, People v Okafore,* 72 NY2d 81). The sentence imposed is therefore modified accordingly. Bracken, J. P., Brown, Kunzeman and Sullivan, JJ., concur.