THIRD DEPARTMENT, MARCH, 1992

(March 5, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL JANOTA, Appellant.—Crew III, J. Appeal from a judgment of the County Court of Tompkins County (Friedlander, J.), rendered November 2, 1990, upon a verdict convicting defendant of the crime of rape in the first degree.

Defendant was indicted for rape in the first degree for an incident which occurred on May 2, 1989 at the victim's apartment in the City of Ithaca, Tompkins County. At defendant's trial, the victim, who was acquainted with defendant and had previously had sexual intercourse with him, testified that on the morning in question defendant forcibly removed her skirt, pantyhose and underwear and raped her. Defendant testified on his own behalf, admitting to the sexual encounter and claiming it to have been entirely consensual. The jury found defendant guilty as charged and he was sentenced to a prison term of 2 to 6 years, from which conviction he now appeals.

During the trial, the victim testified that she had met defendant at a bar and that he had offered her a ride to her friend's house where a party was in progress. She testified that defendant drove by the friend's house without stopping and went on to her apartment. They both went into the apartment and at approximately 2:00 A.M., he forcibly removed her skirt, pantyhose and underwear, carried her into her bedroom, flung her on the bed and had sexual intercourse

with her, during which time she was crying and repeatedly saying "no" and "stop". Thereafter, defendant fell asleep and the victim, confused, embarrassed and unsure of what to do, walked around her apartment until daybreak. At that time, she testified that she awoke defendant and told him that he would have to leave since she had an exam that day. She further testified that defendant grabbed her and again had forcible sexual intercourse with her after which they both fell asleep until about noon when the victim awoke and called a friend to inform her of what had happened. Defendant then awoke and left, whereupon the victim called another friend and told him what had happened.

We believe there must be a reversal and new trial by reason of several errors that occurred at the trial. First, defendant contends that County Court erred in permitting testimony of the second uncharged sexual encounter which occurred some six hours after the rape with which defendant was charged. We agree. It is clear that where a prosecutor intends to offer evidence of uncharged criminal conduct of a defendant, he should seek a ruling from the trial court out of the presence of the jury as to the admissibility of such evidence *(see, People v Ventimiglia,* 52 NY2d 350). That was not done here. Based on the record before us, we can see no basis for the admission of the evidence in question. The second encounter, having occurred some six hours later, cannot be said to have been " 'inextricably interwoven' " with the charged crime *(see, People v Civitello,* 152 AD2d 812, 813, *lv denied* 74 NY2d 947) and was hardly necessary to complete the narrative of the original episode *(see, People v Gines,* 36 NY2d 932). Nor can it be said, as ruled by County Court, that revelation of the entire course of events that morning was relevant to explain the victim's delay in reporting the rape *(see, People v Smyers,* 167 AD2d 773, *lv denied* 77 NY2d 967). The only theory upon which the latter contention could rest would be on the proposition that the victim could not or would not complain while defendant remained asleep in her apartment. Yet the first complaint she did make was by phone while defendant was asleep in her apartment. Since the uncharged crime had no relevance as to the issues on trial, it was error to admit it.

Next, defendant contends that the People were guilty of a *Rosario* violation during the trial *(see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866). During cross-examination of the victim, it developed that Police Officer Joan Russell, who was dispatched to the victim's apartment to investigate the rape, had made handwritten notes concerning the victim's

initial version of the incident. Defense counsel did not realize the import of that testimony until after the victim left the stand. He then moved for a dismissal or mistrial on the basis that he had not been supplied with those notes. County Court denied the motion, ordered that counsel be supplied with the notes and offered counsel the opportunity to have the victim recalled for further cross-examination. Counsel declined to have the victim recalled, because he had cross-examined for 1½ days and was fearful that to reexamine the victim might be seen by the jury as harassment. Given that resolution of this case depended entirely upon the assessment of the credibility of the victim and defendant, we are unable to say that defendant was not prejudiced by the delay *(see, People v Perez,* 65 NY2d 154, 159-160). Furthermore, there is merit to defense counsel's concern about recalling the victim to the stand and we note that the prosecutor was fully aware of the notes in question *prior to trial,* yet failed to give them to counsel as required by CPL 240.45 (1).

Defendant also contends that there must be a reversal because of a *Brady* violation *(see, Brady v Maryland,* 373 US 83). Following her report of the rape, the victim was examined at a hospital at which time no physical signs of trauma were evident. There was no claim in the opening statement of the People or in the victim's testimony on direct examination that she had sustained any injuries as a result of the rape. However, during cross-examination the victim testified that she had sustained a bruise on her neck as a result of the incident and that her friend David Stokes, a prosecution witness, could verify that fact. Stokes had told a member of the District Attorney's office that he did not remember observing such bruising. That information was never relayed to defense counsel.

There is no doubt that where, as here, the outcome of a case turns on the credibility of the complaining witness, evidence impacting adversely on her credibility constitutes *Brady* material *(see, People v Cwikla,* 46 NY2d 434). County Court determined that had the information elicited from Stokes been disclosed, there was no reasonable probability that the result would have been different. Defendant asserts that "reasonable probability" was not the proper standard to be applied in this case. We disagree. In *People v Vilardi* (76 NY2d 67) the Court of Appeals adopted a two-tier approach in determining what standard of materiality applied to cases in which *Brady* violations were found to have occurred. It determined that undisclosed evidence which has been specifically requested by the

defense is material if there is a "reasonable possibility" that, had the evidence been disclosed, the result would have been different (supra, at 77). Where there is no demand or a general demand for "exculpatory material", however, the test is one of "reasonable probability" that the undisclosed evidence would have altered the outcome of the trial (supra, at 73-74, 77). In the case at bar, there was never a specific request for the undisclosed information and County Court, therefore, properly applied the "reasonable probability" standard.

We cannot say, however, that had the evidence of the uncharged crime been withheld from the jury's consideration and had defense counsel been given Russell's notes in a timely fashion for use on cross-examination, that there is no reasonable probability that the outcome of the case would have been altered had counsel been able to examine Stokes with regard to the bruising belatedly claimed by the victim.

For all of the above reasons, the judgment must be reversed and a new trial afforded defendant.

Mikoll, J. P., Yesawich Jr., Levine and Casey, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Tompkins County for a new trial.