■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GEORGE SCOTT, Respondent. [628 NYS2d 965] —Appeals by the People from (1) an order of the Supreme Court, Kings County (Goldman, J.), dated April 18, 1991, which granted the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court (Lombardo, J. at sentencing), rendered May 20, 1987, convicting him of manslaughter in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence, and (2) an order of the same court (Hall, J.), dated May 21, 1993, which, upon reargument, adhered to its original determination on different grounds.

Ordered that the appeal from the order dated April 18, 1991, is dismissed, as that order was superseded by the order dated May 21, 1993, made upon reargument; and it is further,

Ordered that the order dated May 21, 1993, is reversed, on the law, the defendant's motion is denied, the judgment is reinstated, and the matter is remitted to the Supreme Court, Kings County, which upon at least two days notice to the defendant, his surety and his attorney, shall promptly direct the defendant to surrender himself to the court in order that execution of the judgment may be commenced or resumed.

The defendant was convicted of causing the death of Ezekiel

Black on October 16, 1984. The key witness at trial was Glenn Shaw, who testified that after hearing what sounded like a gunshot, he saw the defendant, who was holding a handgun, a woman named Jacqueline Lewis, an unidentified man, and a fourth person running away from the victim's house. Shaw could not tell whether the fourth person was a man or a woman.

The jury convicted the defendant of, *inter alia,* first degree manslaughter. The defendant's conviction was affirmed by this Court, and the Court of Appeals declined to grant leave to appeal *(see, People v Scott,* 155 AD2d 700, *lv denied* 75 NY2d 924)

The defendant then moved pursuant to CPL article 440 to vacate the judgment of conviction. Although the procedural history of the motion is lengthy and complex, we need only concern ourselves with the Supreme Court's ultimate determination that the prosecution failed to produce a "scratch report" dated November 18, 1985, that this report was discoverable both as *Brady* material and as a scientific report pursuant to CPL 240.20 (1) (c), and that there was a reasonable possibility that the report, if it had been made available, would have affected the outcome of the trial. Based on the prosecution's failure to produce this and other documents (which the court concluded would not have affected the outcome of the trial), the court granted the defendant's motion to vacate the conviction and ordered a new trial. We disagree, and conclude that the defendant's motion should have been denied.

The report in question bears the title "HOMICIDE BUREAU INFORMATION SHEET," and contains details regarding the crime, the identity of the victim and the defendant, the personnel involved in the investigation, and the name of the eyewitness. The report also indicates that Glenn Shaw, the eyewitness, submitted to a polygraph test, which was administered by Detective Joseph Ponzi. The report further states that Detective Ponzi determined that Shaw was withholding pertinent information, and that Shaw, when confronted with this conclusion, stated that he knew the identity of the second male but was unwilling to disclose his identity.

We agree with the Supreme Court's conclusion that the report was discoverable both as *Brady* material *(see, People v Baxley,* 84 NY2d 208, 213; *People v Janota,* 181 AD2d 932, 934), and pursuant to CPL 240.20 (1) (c). Moreover, the Supreme Court's determination that the report was not produced until after the trial is supported by the record, and we find no basis for disturbing the court's assessment of the credibility of the witnesses who testified at the hearing on the defendant's mo-

tion *(see, People v Munnerlyn,* 189 AD2d 827; *People v Jamison,* 188 AD2d 551).

We disagree, however, with the Supreme Court's conclusions as to the impact of the prosecution's failure to produce the report. The Supreme Court erred in deciding the defendant's motion in the context of whether there was a "reasonable possibility" that the outcome would have differed had the report in question been produced. The "reasonable possibility" standard is appropriate where the defendant specifically requested the material in question *(see, People v Vilardi,* 76 NY2d 67, 77; *People v Clausell,* 182 AD2d 132, 135). Where the defendant did not make a specific request, reversal is required only where there is a "reasonable probability" that the failure to disclose the material affected the outcome of the trial *(see, People v Janota, supra,* at 934; *People v Nedrick,* 166 AD2d 725, 727). Contrary to the defendant's contentions, he made no specific request for the report, and the latter standard should be applied.

The People correctly argue that because the results of a polygraph examination are not admissible *(see, People v Shedrick,* 66 NY2d 1015, 1018; *People v Ricigliano,* 138 AD2d 751, 753), the information in question would not have been admissible at the defendant's trial. The defendant claims, however, that had the report been disclosed in a timely manner his attorney could have used it as a basis to cross examine the People's witnesses, even if the report itself was not admissible as evidence.

At the hearing on the defendant's motion, Susan Mondo, the trial prosecutor, testified that Detective Ponzi told her that Shaw had been "one hundred percent" truthful. Mondo further testified that there was no question that Shaw had passed the polygraph examination and had been accurate about his observations concerning the defendant. Assistant District Attorney Saray Miller testified that although she prepared the report, she had not attended the polygraph examination, and could not recall any conversation with Detective Ponzi about the defendant's case or the source of the information in the report. In addition, the People submitted an affidavit by Detective Ponzi wherein he stated that Miller had not been present during Shaw's polygraph examination, that he had not made the determination that Shaw was witholding information, and that Shaw had not stated that he knew the identity of the second male. Ponzi further stated that the examination indicated that Shaw was being truthful, and that he would have recommended against Shaw testifying at the Grand Jury had he determined that Shaw was witholding information.

This evidence casts serious doubts as to the accuracy of the information in question and indicates that the information is hearsay upon hearsay from an unknown source. We therefore conclude that there is no reasonable probability that the report, had it been disclosed at the appropriate time, would have affected the outcome of the trial *(see, People v Figueroa,* 213 AD2d 668).

Because the Supreme Court's decision was based not only on the prosecution's failure to produce the report dated November 18, 1985, but on a perceived pattern of prosecutorial misconduct, we note that the court erred in concluding that two other reports constituted *Rosario* material which was not provided to the defendant. A scratch report dated October 16, 1984 contained a synopsis of statements by the victim's parents, who testified for the prosecution, but does not indicate that the author of the report obtained the information directly from the witnesses. Similarly, a scratch report dated April 24, 1986 listed Shaw and the victim's father as witnesses and gave a synopsis of the crime, but did not attribute the synopsis to any witness. The defendant therefore failed to establish that the reports dated October 16, 1984, and April 24, 1986 constituted *Rosario* material *(see, People v Chavis,* 190 AD2d 683; *People v Miller,* 183 AD2d 790).

Moreover, there was no testimony at the hearing to indicate that the defendant did not receive the report dated October 16, 1984. As to the report of April 24, 1986, the defendant's trial counsel testified merely that he was familiar with the contents of the report, but did not have an independent recollection of receiving it. We therefore conclude that the record does not support the Supreme Court's determination that the prosecution failed to produce the reports.

Based on the foregoing, we conclude that the defendant's motion to vacate the judgment of conviction should have been denied. Bracken, J. P., Copertino, Krausman and Florio, JJ., concur.