■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES SCHLAU, Appellant. [985 NYS2d 79]—

Judgment, Supreme Court, Bronx County (Troy K. Webber, J.), rendered July 19, 2011, as amended November 17, 2011 and April 5, 2012, convicting defendant, after a jury trial, of rape in the first degree, criminal sexual act in the first degree (three counts), attempted rape in the first degree, sexual abuse in the first degree (four counts), and criminal possession of a weapon in the fourth degree, and sentencing him, as a second violent felony offender, to an aggregate term of 50 years, unanimously affirmed.

The police were investigating the knifepoint rape of a prostitute, who provided a description of the rapist, and also provided a detailed description of the rapist's car, including the presence of dents on particular areas of the car. The night after the rape, approximately 24 hours after it was committed, the police saw defendant in the same area as the crime scene in a

car precisely matching the description. Furthermore, that area is notorious for prostitution, and it would have been reasonable for the police to draw an inference that the rape suspect had returned to look for a similar victim. Based on all these factors, viewed collectively, the police reasonably suspected that defendant was the perpetrator (*see People v Caponigro*, 76 AD3d 913, 913 [1st Dept 2010], *lv denied* 15 NY3d 952 [2010]; *see also People v Harmon*, 293 AD2d 303 [1st Dept 2002], *lv denied* 98 NY2d 676 [2002]). Accordingly, the police lawfully stopped the car and ordered defendant to get out, whereupon officers saw an illegal gravity knife in plain view, which provided probable cause to arrest defendant. Defendant was arrested and handcuffed, and one of the officers searched the front of the car. A homemade razor knife was recovered from the glove compartment.

We need not reach the issue of whether the police were justified in searching the glove compartment of defendant's car. Even if the razor knife was not admitted as evidence, there is still overwhelming evidence sufficient to support the conviction. Such evidence included, but was not limited to, the presence of defendant's DNA on the body of one of the complaining witnesses, as well as three eyewitness identifications.

The lineup identification was not unduly suggestive (*see People v Chipp*, 75 NY2d 327, 336 [1990], *cert denied* 498 US 833 [1990]). We find no reason to disturb the hearing court's finding that defendant and the other participants were reasonably similar in appearance.

Defendant was not entitled to be present at a conference concerning the scope of cross-examination of one of the victims. There is no reason to believe that defendant could have had any meaningful input (*see People v Fabricio*, 3 NY3d 402 [2004]; *People v Velasco*, 77 NY2d 469, 473 [1991]), and his claim to the contrary is speculative (*see People v Roman*, 88 NY2d 18, 26-27 [1996]).

There was no violation of the People's disclosure obligations under *Brady v Maryland* (373 US 83 [1963]). After an ex parte inquiry, the court properly declined to compel the People to disclose the confidential informant status of one of the victims. In addition to the fact that no promises were made to this victim, the record establishes that she became an informant six months after she reported her sexual assault and identified defendant at a lineup. Her subsequent relationship with law enforcement could not reasonably be viewed as providing a "motive" to testify at defendant's trial to the very same facts she had already related, in her status as a crime victim, long before becom-

ing an informant. Defendant's theories under which the victim's informant status may have affected her credibility or that of police witnesses rest entirely on speculation. In any event, given the overwhelming evidence against defendant and the minimal probative value of the victim's informant status, we find that there is no reasonable possibility that disclosure of such status would have affected the verdict on the counts relating to that victim, let alone the counts relating to the other victims (*see People v Vilardi*, 76 NY2d 67, 73 [1990]).

Defendant's claim regarding the police acquisition of a DNA sample is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits.

The court properly adjudicated defendant a second violent felony offender. Defendant's claim that his Minnesota conviction was not the equivalent of a New York felony conviction is unpreserved and waived (*People v Smith*, 73 NY2d 961 [1989]), and we decline to review it in the interest of justice. Defendant asserts that, given the differences between the New York and Minnesota statutes, the People were required to produce the Minnesota accusatory instrument in order to establish the requisite equivalence. However, the People had no reason to do so in the absence of any challenge from defendant (*see People v Booker*, 301 AD2d 477 [1st Dept 2003], *lv denied* 100 NY2d 592 [2003]). As an alternative holding, we reject defendant's claim on the merits. The record demonstrates that the People related the gist of the Minnesota accusatory instrument during sentencing, and that the Minnesota conviction was for the equivalent of a New York violent felony (*see People v Gonzalez*, 61 NY2d 586, 590-591 [1984]). Since a challenge to defendant's sentencing as a second violent felony offender would have been futile, counsel was not ineffective, under the state and federal standards, for failing to raise that claim (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

We perceive no basis for reducing the sentence. Concur—Gonzalez, P.J., Sweeny, Moskowitz, Richter and Clark, JJ.