OPINION OF THE COURT
Nicholas Figueroa, J.
This decision defines the parameters of Rosario material, and whether material unable to qualify as Rosario because of hearsay can evidence the existence of other Rosario materials. A second issue involves the applicability of the equitable doctrine of laches in a criminal context.
PROCEDURAL HISTORY
Defendants move pursuant to CPL 440.10 to vacate their May 12, 1975 judgments of conviction for murder, first degree, under Penal Law former § 125.25, arising from the May 21, 1971 murder of two New York City police officers. These convictions were affirmed. (People v Bell, 58 AD2d 1042 [1st Dept 1977], Iv denied sub nom. People v Washington, 43 NY2d 719 [1978], rearg denied 43 NY2d 932 [1978].)
*412 Dissatisfied with their local Black Panther Party, the three defendants and their associate, Francisco Torres, left San Francisco during May 1971, and came to a Bronx apartment on Anderson Avenue where Francisco’s brother, Gabriel Torres, lived with his wife Linda. Also residing there were Francisco’s wife, Jacqueline Tabb, and her sister, Karen Parks. On May 21, 1971, defendants and Gabriel Torres returned to the Bronx Avenue apartment within a half hour of the shooting of two police officers. As the bulletin confirming Officer Joseph Piagentini’s death was announced, the three defendants and the Torres brothers exchanged compliments on their efficiency. Bottom alluded to his difficulty in removing Officer Piagentini’s gun from its holster before joining Bell in shooting him. In addition to the slain officers’ .38 caliber service revolvers, Bottom removed his .45 caliber gun and placed it on a table alongside two other .38 caliber guns. Five months later, the Torres brothers, Jacqueline Tabb, and Linda Torres were among those arrested and indicted in the Bronx on unrelated weapons charges. Interrogated about the officers’ murder, Tabb agreed to cooperate in the prosecution of defendants. Her testimony at trial was essentially corroborated by Karen Parks and Linda Torres.
DISCUSSION
Defendants’ grounds for relief allege that the prosecution’s failure to disclose a promise to Jacqueline Tabb concerning her Bronx indictment, and to turn over documents regarding interviews with her constituted a violation of People v Rosario (9 NY2d 286 [1961]), Brady v Maryland (373 US 83 [1963]), and People v Vilardi (76 NY2d 67 [1990]). Because defendants’ motion is not included in a direct appeal, the per se automatic reversal rule, normally applicable to Rosario violations, no longer applies. Instead, as held in People v Jackson (78 NY2d 638 [1991]), defendants’ motion will be construed as brought under subdivision (1) (f) of CPL 440.10, which by its “[improper and prejudicial conduct” language requires defendants to demonstrate actual prejudice resulting from the alleged Rosario violation. Prejudice is established by showing that a “reasonable possibility” exists that the failure to disclose the Rosario evidence contributed to the verdict against them. (People v Jackson, supra, at 649.)
The Jacqueline Tabb Rosario Issue
Defendants accuse Tabb of committing perjury when she denied the existence of her Bronx accord during cross- *413 examination, and claim that their right to a fair trial was violated when her denial was allowed to stand uncorrected by the prosecution. To establish the existence of this alleged agreement with Tabb, defendants rely on a Federal Bureau of Investigation (FBI) interoffice teletype, dated October 30, 1971, sent by an unidentified FBI agent in New York to his Washington, D.C. office containing the following: “Tabb, prior to the interview, indicated she would be amenable to some discussion if some consideration was given her, that the charges presently pending against her be adjusted in her favor. Insp. Jenkins, NYCPD, advised that New York County District Attorney’s Office has basically acceded to Tabb’s demands that charges presently outstanding, Bronx, New York, be dropped in return for her statements regarding captioned matter.”
Defendants contend this teletype, dated several days after Tabb’s initial decision to cooperate, and predating their trial by three and a half years, is strong evidence of an understanding between Tabb and the initial prosecutor in charge of defendants’ case, concerning her pending Bronx weapons charges. Besides Tabb’s agreement being kept from them, defendants claim the trial prosecutor, Assistant District Attorney Robert K. Tannenbaum, suborned her perjury by failing to rectify her testimony that her Bronx case had never been mentioned and that he later exploited Tabb’s perjury during his summation by arguing that her cooperation was uninfluenced by promises.
The People counter that there is nothing evidencing their possession of this particular FBI memo, which defendants, as proponents of the instant motion, have the burden of proving. Defendants, however, point to the close cooperation and exchange of reports between the FBI and police during their joint investigations into the murders, and assaults on other officers, and ask that the veil of their separate entities be lifted. They urge that in the instant case these law enforcement bodies be construed as one for Rosario purposes. There is no denying the closeness of the joint investigations herein. This degree of cooperation, however, does not equate with access to internal FBI files. The FBI, while cooperative, is an independent and separate body from local law enforcement. Especially was this true during that era, when that agency resorted to their Counter Intelligence Program (COINTELPRO), which utilized stratagems in an effort to contain various covert movements. Subsequent revelations, via the Freedom of Information Act, have disclosed that COINTELPRO generated numerous confidential memos during the instant joint investigations. *414 Therefore, if nothing else, the FBI’s desire for secrecy concerning these activities militates against a finding that the People had free access to the internal FBI memoranda at issue here. Moreover, the prosecution denies' possessing this FBI memo. Secondly, they argue that even if they had access, recent case law has held the FBI is not an extension of local law enforcement for Rosario purposes, and, furthermore, the document itself does not constitute Rosario material (People v Kronberg, 243 AD2d 132 [1st Dept 1998]).
Before a Rosario obligation arises, it must be shown this document was in the People’s actual or constructive possession or control. Mere access to statements not in the People’s control or possession is not enough to impose this obligation. (People v Kronberg, supra; People v Washington, 196 AD2d 346 [2d Dept 1994], affd 86 NY2d 189 [1995].) The primary question is whether the documents in question were in the possession or control of an agency that was part of the State “law enforcement chain’ ” (People v Kelly, 88 NY2d 248, 253 [1996]). Normally, where records are in the possession of a Federal agency such as the FBI, they are not accessible without the consent of the Federal agency, there are no Rosario or Brady implications, and mere access, by itself, would not impose an obligation under Rosario. The decision in Kronberg (supra) clearly holds that an imputation of control must be based on more than mere cooperation. (Accord, People v Wright, 225 AD2d 430 [1st Dept 1996], Iv denied 88 NY2d 1026 [1996].)
The source of Jenkins’ information concerning the prosecution’s promise to Tabb remains a mystery. Whether it came from Tabb herself, or from someone who spoke to her, or another investigator is a matter of speculation. Moreover, there is nothing to indicate that Tabb was even aware of an alleged agreement. Thus, Kronberg (supra, at 155) could just as aptly have been construing this FBI memo when it held, “[a] synopsis containing the interviewer’s impressions is not subject to the Rosario rule (see, People v Adger, 144 AD2d 475, mod on other grounds 75 NY2d 723); nor is ‘a second-hand recording of a statement allegedly attributable to a prosecution witness, fraught with all the risks of inaccuracy and unreliability attendant to the relaying of what is essentially hearsay information’ (People v Williams, 165 AD2d 839, 841, affd 78 NY2d 1087).” Consequently, this FBI memo did not constitute Rosario material. Assuming arguendo it was Rosario, in light of the other compelling evidence at trial, its impeachment value pales given the ample cross-examination of Tabb concerning her motiva *415 tion to fabricate testimony. Consequently, defendants have failed to demonstrate prejudice, meaning a reasonable possibility that the failure to disclose “this Rosario” material contributed to the verdict. (People v Jackson, supra, at 649; People v Bianco, 183 AD2d 284 [4th Dept 1992].)
The defense argues that the revelation of this FBI document also constitutes proof that other Rosario materials must exist memorializing the statements of witnesses referred to in the FBI memos, and that a hearing is therefore required to determine their existence. This argument however has several weaknesses. A document relating details conveyed at a third-hand hearsay level cannot properly be characterized as proof of anything; the inherent unreliability of such details is the very raison d’etre of the historic development of the hearsay rule. (5 Wigmore, Evidence §§ 1361, 1362 [Chadbourn rev ed 1974].) Secondly, cases cited by defendants in their request for a hearing are inapposite. People v Adger (supra) related to a trial court’s refusal to scrutinize a Grand Jury analysis sheet and an early case assessment sheet to determine whether they contained Rosario material. It is merely authority for the proposition that such determinations must properly be made by the trial court, and does not relate to postappeal CPL 440.10 motions, nor to situations where no such request was ever made and refused at trial. The other case cited, People v Poole (48 NY2d 144 [1979]), states that in cases where the defendant can articulate a factual basis for the assertion that there are documents, the existence of which is being denied, a trial court should make inquiry to resolve the dispute. Again, this relates to the Trial Judge’s duty in a situation where the dispute arises at trial and needs to be addressed by the Judge at that juncture. Accordingly, there is no necessity for a hearing on this issue.
The Laches Issue
Lastly, the court must address the People’s claim that defendants’ motion is barred by laches, because the defense" had notice of the instant motion’s underlying facts as early as 1992, and did nothing in the intervening five years. The prosecution claims the consequent dimming of memories, the difficulty of tracing the whereabouts of relevant documents, plus the defendants’ history of engaging in “piecemeal litigation” have all served to increasingly prejudice their ability to respond effectively, and argue that the court would not abuse its discretion in denying without a hearing defendants’ CPL 440.10 motion because of the delay, and failure to show due diligence.
*416 Defendants respond that except for a new evidence claim under CPL 440.10 (1) (g) requiring due diligence, laches is inapplicable to CPL 440.10 motions. However, the concept of laches is an equitable doctrine which in some instances may be codified by statute, but which has an independent existence (Walters v Scott, 21 F3d 683 [5th Cir 1994]). Further, the defense contends that since laches is an affirmative defense which must be proven by the movant, not only unreasonable delay must be shown, but also prejudice. The defense asserts the People were aware and had notice of the claims, because it was the prosecution that prevented the Federal litigation of the Tabb accord by arguing the issue had not yet been raised. in State court, citing Rapf v Suffolk County (755 F2d 282 [2d Cir 1985]), a civil proceeding holding that under New York law, laches requires not only proof of delay and prejudice, but lack of knowledge of the party asserting laches that the claim would be asserted. Such a lack of knowledge does not appear to be present in the instant case.
New York law is consistent that laches requires unreasonable delay resulting in actual prejudice or disadvantage to another. (Macon v Arnlie Realty Co., 207 AD2d 268 [1st Dept 1994]; Meyer v Meyer, 74 AD2d 945 [3d Dept 1980]; Dante v 310 Assocs., 121 AD2d 332 [1st Dept 1986].) In Tamini v M/V Jewan (808 F2d 978 [2d Cir 1987]), the court stated that because laches is an equitable doctrine, it may not be based on the mere lapse of time alone. Federal law regarding laches in the context of habeas corpus proceedings has the same requirement of prejudice (Hillery v Sumner, 496 F Supp 632 [ED Cal 1980]; Walters v Scott, 21 F3d 683 [5th Cir 1994], supra). To mitigate the five-year lapse, the defense explains that until 1994 when their certiorari petition was denied, they continuously challenged their convictions in Federal court. Thereafter, from the 1994 denial of their writ until 1996, the defendants’ efforts to interpose the current grounds were hampered when they were forced to seek new counsel, and upon succeeding in 1996 they brought the instant motion within a year.
With regard to the prosecution contention that the motion should be barred under CPL 440.10 (3) because the claim could have been brought in an earlier motion, such statutory bar is permissive, not mandatory. Moreover, after more than 20 years, it is difficult to see how the additional five years since 1992 would dim memories disproportionately. The interests of justice, as perceived by this court, has required resolution of defendants’ claims on the merits.
*417 It is obvious that whether each claim is analyzed individually or collectively, there are numerous fatal flaws to each prong of defendants’ Rosario claim. All of the documents relating to Jacqueline Tabb forming the basis for this claim cannot be classified as Rosario material, both because they are hearsay and as such are inherently unreliable, and because the defendants have failed to show their actual or constructive possession by the District Attorney. Even if the defendants did not have that barrier to overcome, an examination of the statements attributed to these witnesses reveals that they either contained no variance from trial testimony, minor variances, or variances that had already been exploited by the defense during lengthy cross-examination. None of these memoranda contained anything inconsistent with guilt, or material that would have changed the outcome had they been available to defense counsel. The end result of such an analysis shows that the documents forming the basis of the Rosario claim cannot, meet the requirements necessary to even define them as such, much less meet the applicable standards of “reasonable possibility”. Whether considered on its own merits or in the aggregate, none of these claims can be substantiated.
It should be noted that with regard to the Brady and Rosario claims raised by defendant, although each has been analyzed on its merits, this court has been mindful of the admonition in Kyles v Whitley (514 US 419 [1995]), and has considered the cumulative effect of all the contested evidence. Accordingly, defendants’ motion pursuant to CPL 440.10 to vacate their convictions is denied in all respects.
[Portions of opinion omitted for purposes of publication.]