OPINION OF THE COURT
Nicholas Figueroa, J.
On March 24, 1999, this court heard reargument on its denial of defendant’s CPL 440.10 motion (sub nom. People v Bell, 179 Misc 2d 410 [edited for publication]), in which defendant sought to vacate his 1975 murder convictions based upon nondisclosure of Rosario (People v Rosario, 9 NY2d 286 [1961]) and Brady material (Brady v Maryland, 373 US 83 [1963]). The thrust of defendant’s reargument is that this court applied an incorrect standard in assessing the prosecution’s failure to disclose a cooperation agreement with its witness, Jacqueline Tabb. To establish the existence of this alleged agreement, defendant relies upon a Federal Bureau of Investigation (FBI) interoffice teletype, dated October 30, 1971, sent by an unidentified FBI agent in New York to his Washington, D.C. office, containing the following: “Tabb, prior to the interview, indicated she would be amenable to some discussion if some consideration was given her, that the charges presently pending against her be adjusted in her favor. Insp. Jenkins, NYCPD, advised that the New York County District Attorney’s Office has basically acceded to Tabb’s demands that the charges presently outstanding, Bronx, New York, be dropped in return for her statements regarding captioned matter.”
Defendant claims the court erroneously applied the Bagley (United States v Bagley, 473 US 667 [1985]) “reasonable possibility” test to the prosecution’s breach of duty in not disclosing the mentioned agreement, and urges that the alleged breach involves more than mere failure to disclose impeachment information, but more importantly the prosecution’s use during trial of Tabb’s perjured testimony.
Defendant, however, overlooks the distinction between existence of a promise and the indication of a promise as implied in the above FBI teletype, which formed the basis of defendant’s original CPL 440.10 claim. The derivative nature of this FBI *841 teletype prevents it from being considered as direct evidence of the prosecution’s use of perjured testimony. Were it direct evidence of perjured testimony, the “harmless error” standard of People v Steadman (82 NY2d 1 [1993]) might apply. That standard requires a new trial where there is any reasonable likelihood that the perjured testimony concerning an agreement could have affected the judgment of the jury, unless the prosecution establishes that the error was harmless beyond a reasonable doubt. Harmless beyond a reasonable doubt has also been termed the “reasonable possibility” test. (See, People v Pressley, 91 NY2d 825 [1997].) It is significant that only cases on direct appeal have applied the “harmless error” standard to a witness’ peijurious denial of an agreement. It has yet to be applied on a postjudgment motion to vacate a criminal conviction.
With regard to Rosario violations, the Court of Appeals in People v Jackson has elected to distinguish between direct appeal (per se automatic reversal) and CPL 440.10 motions (requiring actual prejudice for relief).[1] Still unanswered, however, is whether “harmless error” is the appropriate standard in a postjudgment motion with regard to perjured testimony. In People v Novoa,[2] which involved a CPL 440.10 motion, the Court of Appeals stated “[i]n that the Rosario violation itself requires reversal and a new trial, we do not reach the issue whether harmless error analysis can or should be applied with respect to the promises alone.” In any event, the “harmless error” standard cannot be applied in the instant case, because there is no reliable evidence' of such an agreement, except for the FBI interoffice teletype quoted containing hearsay several degrees removed.
Given that this FBI teletype cannot be deemed direct evidence of peijured testimony, it may nonetheless be considered as impeachment material under Brady (supra). Obviously, if an understanding between the People and Ms. Tabb existed, the People had a clear duty to apprise defendant under Brady and Rosario[3] principles. As Brady material, the test to be applied is dependent upon whether there was a specific request for the material. In the absence of a specific request, the applicable standard is a determination of whether there is a “rea *842 sonable probability’ that the outcome would have been different had the evidence been disclosed. (See, United States v Bagley, 473 US 667 [1985], supra; see also, People v Chin, 67 NY2d 22 [1986].) If there was a specific request, then the “reasonable possibility” standard enunciated in People v Vilardi (76 NY2d 67 [1990]) would apply. Vilardi represented a decision by the New York Court of Appeals to depart from the Federal standard of “reasonable probability” to afford State defendants the increased protection of the “reasonable possibility” test in situations where Brady material was specifically requested.
Although defendant does not claim he made a specific request for Brady material, he attempts by analogy to equate the prosecution’s pretrial silence regarding the existence of the FBI teletype with a specific request, citing People v Ramos (146 Misc 2d 168 [Sup Ct, Bronx County 1990]). However, Ramos involved a prosecutor’s affirmative representation that certain Brady material did not exist. Even if, arguendo, the prosecution’s possession of the FBI teletype can be shown,[4] which this court’s previous decision found it cannot, the court finds that silence without any affirmative representation is not the equivalent of a specific denial.[5] The defense has an unrestricted right to request these documents, and indeed in the instant case it did not. Any other result would serve to improperly extend Vilardi’s scope, since the prosecution’s silence would always be deemed the equivalent of a specific request. Accordingly, the “reasonable probability” standard should be held to apply to Brady claims where, as here, an affirmative specific request has not been made, and no misrepresentations have been made by the prosecution.
Having carefully examined the voluminous evidence presented, this court finds that the FBI teletype could not in any event even meet the lesser “harmless error” or “reasonable possibility’ test, because, as set out in this court’s October 29, 1998 decision, the jury was well aware of other “extensive quid pro quo to Tabb for her cooperation” (People v Bell, Sup Ct, NY County, Oct. 29, 1998, Figueroa, J., slip opn, at 20, 179 Misc 2d 410, supra [edited for publication]). Consequently, posses *843 sion of the FBI teletype would have been of negligible value to the defense. This court therefore adheres to its original decision regarding the Brady claims.
Defendant’s Request for a Hearing
Defendant next argues based on People v Baxley (84 NY2d 208 [1994]), which also dealt with hearsay evidence, that he should be entitled to an evidentiary hearing. Defendant’s reliance on Baxley, however, is misplaced. First, the degree of hearsay in the instant case is at least one degree further removed than in Baxley, where the declarant had told the affiant that the prosecution had induced him to testify falsely. Further, in the instant matter, the New York author of the teletype has not sworn an affidavit, unlike in Baxley, and indeed has not been identified. The other cases cited by defendant, People v Carraway (20 AD2d 861 [1st Dept 1964]) and People v Wedra (56 AD2d 903 [2d Dept 1977]), likewise involve closer degrees of hearsay than the instant case. The other case cited by defendant, People v Gayle (148 AD2d 307 [1st Dept 1989]), is likewise inapposite because in contrast to the instant case, the jury was unaware of the inducements offered to the prosecution witness.
In the instant matter, an appreciation of the degree of hearsay involved is imperative. The FBI teletype was sent from an unidentified FBI agent in New York to his Washington, D.C. counterpart. The New York FBI agent does not indicate whether Inspector Jenkins advised him personally, or whether he obtained the information from some unidentified third party, or whether Jenkins himself received the information firsthand. Therefore, this makes the FBI teletype not only hearsay, but hearsay of a degree so attenuated that to allow a hearing based on this teletype might justifiably be called a “fishing expedition”. Moreover, defendant has never suggested that he would call hearing witnesses who might have knowledge that a cooperation agreement existed. Rather, defendant intends to “test the memory” of former prosecutors John F. Keenan and Robert K. Tanenbaum, or Tabb herself. In their affidavits, both of the aforesaid prosecutors categorically deny a cooperation agreement existed. It is therefore difficult to see how a hearing would assist defendant, especially since the principal source of possible enlightenment, Inspector Jenkins, is deceased. Since defendant offers no sworn allegations of fact to substantiate the hearsay allegations in the teletype, the court may, under CPL 440.30 (4) (b), deny this motion without a hearing. It *844 should also be noted that, as outlined in this court’s October 29, 1998 decision (People v Bell, 179 Misc 2d 410, supra), the prosecution’s possession or control of the FBI teletype cannot be shown, making the hearing irrelevant so far as the Brady claims are involved. Finally, a hearing would hold little promise for defendant. The impact on the jury of the cooperation agreement, assuming arguendo it could be proved, could not even meet the “reasonable possibility” standard, given the jury’s awareness of all the other inducements to Tabb. Accordingly, a hearing is denied.
Inspector Jenkins’ 302’s
Defendant offers new evidence, consisting of four FBI memos known as 302’s, not submitted in his original CPL 440.10 motion. They embody FBI interviews on October 15, 21, 27, and 29, of 1971. These 302’s, in which Inspector Jenkins is mentioned, have been accessible to the defense since 1991, and constitute thirdhand hearsay. Consequently, the defense would encounter the same difficulties with them as with the FBI interoffice teletype, because even the “reasonable possibility” standard could not be met, in view of the jury’s acute awareness of the prosecution’s blandishments to Tabb, and the ample cross-examination material possessed by the defense on the same subject. In any event, these observations are wide of the mark, since the defendant’s original CPL 440.10 motion failed to cite these “302’s”.
Defendant has the burden of going forward on his motion to vacate, and that burden cannot be shifted by their claim that the prosecution possessed the four 302’s since 1991. Mere possession imposed no duty on the prosecution to sort out the 302’s from among the voluminous documents for defendant’s benefit. When asked as to why the 302’s were not included in the original motion, defendant’s current counsel replied “no one found them but me. I became new counsel, Judge. I wasn’t in the original motion.” When further asked whether defendant’s previous attorney had the same access, defendant’s attorney gave the voluminous nature of the material as a reason for previous counsel not discovering the 302’s. CPL 440.10 (3) (c) permits denial of a motion to vacate where the defendant was in a position to raise the issue upon a previous motion. Defendant cannot avoid the consequences of his prior omission of the 302’s by attempting to insert them by way of a motion to rehear rather than a new motion. This would constitute an inappropriate use of a motion for rehearing, which is properly *845 confined to issues in the original motion. The defense argues by implication that new counsel’s extensive familiarity with FBI documents involved due to her involvement in another case[6] involving the FBI counterintelligence program, designed to subvert black militant groups, gives her added expertise, and should entitle defendant to adduce these 302’s. However, this court finds that new counsel’s expertise is an inappropriate consideration in the assessment of CPL 440.10 motions, and would if accepted undermine the doctrine of finality. Finally, the concededly voluminous documentation that prior defense counsel was required to review cannot be considered a mitigating factor for permitting present counsel to now utilize the omitted 302’s. This court’s decision of October 29, 1998 was generous in the application of the laches doctrine, despite considerable delay by the defendant in bringing that motion. (People v Bell, 179 Misc 2d 410, supra.) Now, however, the doctrine of finality must be invoked.
Defendant’s Request for a Hearing on the People’s Possession of the FBI Teletype
Defendant argues that at minimum he is entitled to a hearing on whether the FBI teletype was in the possession or control of the prosecution, citing People v Kronberg (243 AD2d 132 [1st Dept 1998]). Although a hearing on the prosecution’s possession and control did occur in Kronberg, the risks of inaccuracy and inherent unreliability of hearsay prevents the FBI teletype’s acceptance as Rosario material. Moreover, given the attenuated nature of the information in the teletype, it cannot be considered Brady material either. Therefore, a hearing to determine the prosecution’s control of these documents is denied.
Defendant’s Pro Se Status at Trial
Defendant also challenges the trial court’s decision in permitting him to proceed pro se. In support he cites the trial court’s dismissal of the charges against the Torres brothers, his codefendants, who were represented by attorneys. This argument, too, was not part of the original CPL 440.10 motion to vacate, and moreover has been the subject of a previous motion to vacate, not to mention a Federal habeas corpus application, and a more recent unsuccessful petition for coram nobis relief *846 (denied Mar. 5, 1998) alleging the ineffectiveness of his appellate attorneys in not previously raising the issue of his pro se representation on previous appeal. Accordingly, this issue will not be considered by this court.
Other Issues Raised by Defendant
Defendant seeks to revisit issues relating to his guilt compared with his codefendants, because of the paucity of evidence that he was an actual shooter. These issues, however, have already been heard on appeal. Further, defendant argues that the court’s summary of facts concerning when he went to San Francisco, and whether he lived in the Anderson Avenue apartment is inaccurate. These alleged discrepancies are de minimis, and it is unnecessary to revisit them.
Decision
Accordingly, defendant’s motion is denied, as is the request to file a separate brief on materiality. Such a brief would not assist the court given the hearsay nature of the documents defendant relies upon.

. People v Jackson, 78 NY2d 638 (1991).

. People v Novoa, 70 NY2d 490, 499 (1987).

. As Rosario material, the reasonable possibility standard governs as discussed in this court’s October 29, 1998 opinion. (People v Bell, 179 Misc 2d 410, supra.)

. Answered in the negative in this court’s previous decision of October 29, 1998. (People v Bell, 179 Misc 2d 410, supra.)

. The case cited by the defense, People v Qualls (70 NY2d 863 [1987]), is inapposite as it deals with the promise itself as evidence of perjured testimony, now dealt with under the Steadman rule, not as Brady impeachment material.

. (People v Bin Wahad, 154 Misc 2d 405 [1993].) It is noteworthy that predecessor counsel in the instant matter, Robert Boyle, also appeared for defendant in the Bin Wahad case.