Richard G. BERGER, Petitioner,

v.

James D. STINSON, Superintendent of Great Meadow Correctional Facility, Respondent,

and

Howard R. Relin, Intervenor–Respondent.

No. 97–CV–6150L.

United States District Court, W.D. New York.

May 1, 2000.

Robert M. Simels, Robert M. Simels, P.C., New York City, for Richard G. Berger, petitioner.

Robert Mastrocola, Howard R. Relin, District Attorney of Monroe County, Rochester, NY, for Howard R. Relin, District, Attorney of Monroe County, intervenor-plaintiff.

Howard R. Relin, Monroe County District Attorney, Rochester, NY, for Howard Relin, intervenor-defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

Petitioner, Richard Berger, while confined at Great Meadow Correctional Facili-

ty, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Berger was convicted on June 13, 1986, following a jury trial in Supreme Court, Monroe County, of Murder in the Second Degree. N.Y.Penal L. § 125.25(1). This charge arose out of the shooting death of James Siggelow in 1985. Berger was sentenced to a term of imprisonment of twenty-five years to life.

Berger appealed his conviction to the Appellate Division, Fourth Department, alleging ineffective assistance of counsel and an evidentiary error on the part of the trial court. The Appellate Division affirmed Berger's conviction. *People v. Berger*, 129 A.D.2d 971, 514 N.Y.S.2d 284 (1987). The New York Court of Appeals denied leave to appeal. *People v. Berger*, 70 N.Y.2d 642, 518 N.Y.S.2d 1034, 512 N.E.2d 560 (1987).

In June 1994, Berger filed a motion in the trial court to vacate his conviction under N.Y.C.P.L. § 440.10. The ground for relief asserted in that motion was that the prosecutor had failed to disclose to Berger the criminal record of James Ryan, who had given eyewitness testimony at Berger's trial. Berger alleged that he had just recently been made aware of Ryan's record, which included several convictions of various offenses as well as an outstanding warrant for his arrest in Florida, in the course of defending against a second murder prosecution involving a different victim, Patrick Vitarelli.[1]

In a letter dated October 6, 1994, several weeks after the trial court heard oral argument on petitioner's § 440.10 motion, Berger's attorney informed the court that during the course of the Vitarelli murder case, the prosecution had provided him with the statement of one Richard Lindsay. In that statement, which was dated September 23, 1986—over three months after Berger's conviction in the Siggelow case—Lindsay stated that during a conversation he had had with Ryan, Ryan told him that "Berger got a chance to see [Ryan] to a job, saying that he had shot James Siggelow."[2] Berger's attorney stated in his letter that he would "utilize this further evidence to demonstrate at any hearing ordered by this Court, that [the prosecutor] with intent to violate Mr. Berger's constitutional, statutory, and prevailing principles of law [sic] in 1985, knew of exculpatory material beyond the criminal record of James Ryan which he purposefully did not disclose to the defense." Intervenor's Answer, Appendix ("App.") Y.

In a Decision and Order filed on October 18, 1994, Justice Raymond E. Cornelius denied Berger's motion. First, Justice Cornelius found that the New York Criminal Procedure Law imposed a duty upon a prosecutor, at the time of trial, to reveal a record of conviction of a witness, or the existence of pending criminal charges against a witness, only if that information was known to the prosecution. App. AA at 5. Justice Cornelius went on to find that there was no basis in the evidence on which to believe that the prosecutor had been aware of Ryan's criminal record at the time of Berger's trial.

Justice Cornelius next found that even if the prosecutor had been aware of Ryan's record at the time of the trial, Berger's motion should still be denied. After analyzing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and other Supreme Court and New York Court of Appeals cases addressing the duty of a prosecutor to disclose information favorable to the defense, Justice Cornelius ruled that Berger would be entitled to a new trial only if there were a "reasonable possibility" that disclosure of Ryan's criminal

---

1. Berger was ultimately convicted on that charge as well, and his conviction was affirmed. *People v. Berger*, 234 A.D.2d 980, 653 N.Y.S.2d 461 (4th Dep't 1996), *appeal denied*, 89 N.Y.2d 983, 656 N.Y.S.2d 742, 678 N.E.2d 1358 (1997).

2. Although it is not completely clear to whom the word "he" refers, when read in context, it appears that it refers to Ryan, not Berger.

record would have led to a different result in Berger's trial. · App. AA at 9. Under this standard, he stated, the undisclosed evidence would be considered material "only if it 'create[d] a reasonable doubt that did not otherwise exist.'" *Id.* (quoting *People v. Vilardi*, 76 N.Y.2d 67, 73, 556 N.Y.S.2d 518, 555 N.E.2d 915 (1990)). ·

Justice Cornelius (who presided over Berger's trial) then found that there was "no reasonable possibility that disclosure and use of the criminal record of Mr. Ryan would have created a reasonable doubt, and therefore, resulted in a different outcome." *Id.* at 10. Justice Cornelius recounted the "overwhelming" evidence of Berger's guilt, and also noted that in Berger's trial in ·the Vitarelli murder case, Berger's counsel "fully utilized the criminal record of Mr. Ryan for purposes of impeachment, but nonetheless, a jury ... found the Defendant guilty of that crime." *Id.* at 11.

As for Lindsay's statements, a cover letter addressed to counsel from Justice Cornelius's law clerk stated that Berger's attorney's October 6, 1994 letter to the court ·had not been "considered by the Court in reaching its decision." *Id.* The letter did not state why.

On ·February 23, 1995, the Appellate Division denied permission to appeal from Justice Cornelius's decision. The Court of Appeals dismissed Berger's application to appeal on March 28, ·1995. *People v. Berger*, 85 N.Y.2d 906, 627 N.Y.S.2d 329, 650 N.E.2d 1331.

Berger then filed his habeas petition in this court. His single claim for relief is based upon the prosecutor's ·alleged *Brady* violation, although there are three aspects to this claim. The first relates to Ryan's criminal record, and the second to Lindsay's statements. The third, which is asserted here for the first time in any court, state or federal, is that the prosecution also failed to disclose a statement made to police officers by another person, David Leecy. In that statement, the copy of which submitted by petitioner is neither dated[3] nor signed, Leecy stated that on May 16, 1985, Ryan told him that Ryan, Berger and Lindsay had gone out for coffee the night before. Leecy continued that

> Jim [Ryan] said that heard Rick [Berger] and Rick [Lindsay] whispering about trying to get somebody to make a phone call to get him out of the house. Jim then got into his car with the two Ricks· and the two Ricks were saying how Rick Lindsay was to fire bomb Ziggys car and that Rick Berger would shoot him. Jim said the phone call to get the person out of the house was Ziggy. Jim didn't say any more after that. I never told anybody what Jim Ryan had told me, because I knew that Rick Berger wouldn't like that. Rick Berger had pointed a gun at me while we were in Florida [in September 1994] and said that if I fucked him over he would kill me.

Affidavit of Robert M. Simels, Esq. (Docket Item 3) Ex. B.

Berger's attorney states that he obtained Leecy's statement "[d]uring the course of another litigation involving the petitioner and the same prosecution office...." Simels Aff. ¶ 4. He states that Ryan's alleged statements to Leecy that Ryan had been with Berger and Lindsay on the night of May 15, and that Lindsay· had planned to "fire bomb" the victim's car, were inconsistent with Ryan's testimony. In his ·trial testimony, Ryan did not mention Lindsay's presence that night. He testified only that he was with Berger when Berger killed Siggelow.[4]

## DISCUSSION

### I. Mixed Petition

As a general rule, a federal court may not consider the merits of a state prison-

---

3. In the statement, Leecy refers to May 16, 1985 as "[l]ast Thursday," so it appears that the statement was made within a week after that date.
·

4. The testimony of other witnesses established that when Siggelow's body was discovered inside his car at about 11:45 p.m. on the night of the murder, the car was on fire.

er's habeas petition until the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). In *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court adopted a "total exhaustion" rule, holding that a petition containing both exhausted and unexhausted claims (a "mixed petition") should be dismissed in its entirety, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." In accordance with that holding, the Second Circuit has stated that "[p]assing on the merits of claims in a habeas petition containing unexhausted claims runs counter to *Rose v. Lundy....* " *Levine v. Commissioner of Correctional Servs.,* 44 F.3d 121, 125 (2d Cir.1995), *cert. denied,* 520 U.S. 1106, 117 S.Ct. 1112, 137 L.Ed.2d 313 (1997).

In 1996, however, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, which amended the habeas corpus statutes in a number of ways, two of which are particularly relevant in the instant case. First, as amended by AEDPA, 28 U.S.C. § 2244(d) provides that

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In addition, AEDPA permits the court to deny on the merits habeas petitions containing unexhausted claims. Section 2254 of Title 28 now states, in relevant part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State;

\* \* \* \* \* \*

■ (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Section 2254(b) thus gives courts discretion to deny unexhausted petitions on the merits, though it does not require them to do so.

■ In the case at bar, Berger admits that he has filed a mixed petition, but he states that he did so for a reason. According to Berger, his only other options were either to file a petition containing only his exhausted claims,[5] or to first file another

---

**5.** The parties dispute whether two, or just one, of petitioner's claims are exhausted.

Berger contends that only the claim involving Leecy is unexhausted. The State maintains

§ 440.10 motion on the unexhausted claim and wait until the state court decided that motion before filing a habeas petition in federal court. Berger states that he did not want to file a petition containing only his exhausted claims, because to do so would have meant losing the availability of future federal review of his unexhausted claim; any second or successive petition asserting this claim would have been subject to dismissal as an abuse of the writ. *See* 28 U.S.C. § 2244(b)(2); Rules Governing Section 2254 Cases Rule 9(b). Berger also states that he did not want to file another § 440.10 motion first in order to exhaust this claim, because awaiting the resolution of that motion in state court might have resulted in a subsequently filed habeas petition being dismissed as untimely.

At the outset, I do not understand Berger's reasoning with respect to his contention that filing a second § 440.10 motion might have rendered an eventual federal habeas petition time-barred. Petitioner states at page 2 of his reply memorandum that "if, under the rule of complete exhaustion, prisoners pursue collateral relief from their conviction in state court, the resolution of the prisoners' claim or claims, may extend more than one year beyond the date of their final direct review and their convictions would be insulated from federal habeas review." Berger neglects to mention § 2244(d)(2)'s tolling provision, however, pursuant to which his time for filing a habeas petition would have been tolled while any "properly filed application for State post-conviction or other collateral review" was pending. Thus, the pendency

of a motion under § 440.10 would have tolled Berger's time to file a petition in this court. *See Smith v. McGinnis,* 208 F.3d 13 (2nd Cir.2000) ("There ... is no dispute that [petitioner's] state coram nobis petition, if pending within that one-year grace period, would ·trigger Section 2244(d)(2)'s tolling allowance").[6]

■ I therefore disagree with petitioner's assertion that he had no choice but to file a mixed petition in order to preserve all of his claims for review. Although his petition is therefore subject to dismissal under § 2254(b)(1)(A), I find it preferable in this case to exercise my discretion under § 2254(b)(2) and dismiss the petition on the merits, notwithstanding Berger's failure to exhaust all of his claims.

Section 2254(b)(2) does not provide a standard for deciding whether to dismiss an unexhausted claim on the merits, and neither the Supreme Court nor the Second Circuit has ruled on the matter. District courts within this circuit have generally held, however, that unexhausted claims should not be dismissed on the merits unless it is clear that the petitioner is not entitled to relief. As one court put it: "In the interests of comity, an unexhausted claim should not be dismissed on the merits unless it is obvious, based on established law and a relatively quick reading of the record, that the claim does not raise any issue upon which a habeas court may grant relief." *Norman v. New York,* No. 97 Civ. 7051, 1999 WL 983869 *5 (S.D.N.Y. Oct.29, 1999).

After reviewing the record, I find that petitioner's claims relating to Leecy's

---

that the claim relating to Lindsay is also not exhausted, because, given the manner and timing of its presentation to the state court—a letter submitted months after Berger filed his § 440.10 motion, and weeks after the court heard oral argument on the motion—this claim was never "fairly presented" to the state courts. *See Levine,* 44 F.3d at 124; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). As explained below, I find it unnecessary to decide whether this claim has been exhausted, as it is plainly meritless.

6. I also note that § 2244(d)(1)(A)'s one-year period running from the date on which the state court judgment became final does not apply to Berger, whose conviction became final in 1987. For prisoners whose convictions became final before the effective date of AEDPA, courts, including the Second Circuit, have fashioned a one-year grace period running from AEDPA's effective date of April 24, 1996. *See Ross v. Artuz,* 150 F.3d 97, 102–03 (2d Cir.1998).

statements (and to Lindsay's as well, if that claim is indeed unexhausted, *see* n. 5, *supra*) are plainly meritless, and should therefore be dismissed. It would therefore serve little purpose to require petitioner to present these claims in state court before returning here. Furthermore, it is not certain that a state court would even reach the merits of one or both of these claims if it found that they could have been raised in Berger's previous § 440.10 motion. *See* N.Y.C.P.L. § 440.10(3)(c).

## II. General Standards Applicable to Habeas Corpus Petitions

In addition to the previously discussed AEDPA amendments, that Act also effected some changes upon the nature and extent of review that a federal court can conduct in considering a § 2254 petition. In particular, 28 U.S.C. § 2254(d) now provides that

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court recently expounded upon this language in *Williams v. Taylor,* — U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Writing for the majority with respect to this matter, Justice O'Connor stated that a state court's decision can be contrary to the Supreme Court's precedent in two ways: first, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law. Second, a state-court decision is also contrary to [the Supreme] Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. *Id.* at 1519.

Justice O'Connor further stated that "[t]he text of § 2254(d)(1) …. suggests that the state court's decision must be *substantially different* from the relevant precedent of [the Supreme] Court." *Id.* (emphasis added). She added that a "state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent." *Id.* at 1519–20. Even if "the federal court considering the prisoner's habeas application might reach a different result applying" relevant Supreme Court precedent, so long as the state court applied the correct legal rule from Supreme Court cases, such a "run-of-the-mill" state court decision could not be deemed "contrary to" Supreme Court precedent. *Id.* at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that

a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

In another change wrought by AEDPA, 28 U.S.C. § 2254(e)(1) now states that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" *Sellan v. Kuhlman,* 63 F.Supp.2d 262, 267 (E.D.N.Y.1999) (quoting *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,* 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997)); *see also Smith v. Sullivan,* 1 F.Supp.2d 206, 210 (W.D.N.Y. 1998) (AEDPA's amendments to § 2254 "ha[ve] clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way").

### III. Ryan's Criminal Record

Berger first asserts that the prosecution's failure to search for and disclose to the defense Ryan's criminal record violated Berger's right to due process under *Brady* and its progeny, including *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *United States*

*v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). I find that this claim is meritless, for several reasons.

As explained above, this claim has been exhausted and was addressed on the merits by a state court. Accordingly, pursuant to the dictates of § 2254(e)(1), Justice Cornelius's factual findings are presumed correct, and it is Berger's burden to overcome that presumption by clear and convincing evidence. In addition, under § 2254(d), Berger is not entitled to relief on this claim unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "the state court confront[ed] facts that [we]re materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to" that of the Supreme Court. *Williams,* —— U.S. at ——, 120 S.Ct. at 1519.

Applying these standards to the case at bar, petitioner is clearly foreclosed from the relief he seeks. First, Justice Cornelius's factual finding that the prosecutor was unaware of Ryan's criminal record at the time of Berger's trial carries a presumption of correctness. Berger has not presented evidence to overcome that presumption, and indeed does not appear to dispute it, as his claim is that the prosecutor simply failed to *search* for any information about Ryan's criminal history.

"The *Brady* obligation extends only to material evidence ... that is known to the prosecutor." *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) (citing *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Although "[a]n individual prosecutor is presumed ... to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police,'" *id.* (quoting *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555), "knowl-

edge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Id.* (quoting *United States v. Gambino*, 835 F.Supp. 74, 95 (E.D.N.Y.1993), *aff'd*, 59 F.3d 353 (2d Cir.1995), *cert. denied*, 517 U.S. 1187, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996)). At the very least, then, the information about Ryan's criminal proceedings in Florida could not be imputed to the prosecutor here. *See United States v. Quinn*, 445 F.2d 940, 944 (2d Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971) (refusing to impute knowledge of Florida prosecutor to Assistant United States Attorney in New York, and rejecting as "completely untenable [the] position that knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor") (internal quotes omitted). *See also United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.) ("prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence"), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *accord United States v. Jones*, 34 F.3d 596, 599 (8th Cir.1994), *cert. denied*, 514 U.S. 1067, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *United States v. Stuart*, 923 F.2d 607, 612 (8th Cir.1991), *cert. denied*, 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991).

 More fundamentally, however, I find that this claim fails for the second reason advanced by Justice Cornelius: lack of materiality. As stated by the Supreme Court, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles*, 514 U.S. at 436–37, 115 S.Ct. 1555. Rather,

the prosecution's failure to disclose evidence rises to the level of a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434, 115 S.Ct. 1555. Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the [undisclosed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.; see also United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (standard of materiality is whether failure to disclose the evidence "undermines confidence in the outcome of the trial").

In his decision on Berger's § 440.10 motion, Justice Cornelius noted that there was no reason to think that a New York State Criminal Investigation Information Service report, had one been requested by the prosecutor, would have revealed Ryan's criminal proceedings in Florida. Justice Cornelius also expressed doubt about whether he would have permitted inquiry on cross-examination of Ryan about Ryan's forty-one-year-old Grand Larceny conviction in 1945. App. AA at 6. Even if he would have allowed such inquiry, however, Justice Cornelius stated that "at best, ... cross-examination, for impeachment purposes, would have related to this one felony conviction and two more recent disorderly conduct convictions, together with the underlying facts in each instance." *Id.* at 7.

Justice Cornelius next examined the relevant standards of materiality under both federal and New York law. He stated that whereas under federal law as established by the Supreme Court, the test is whether there is a reasonable *probability* that the outcome would have been different had the evidence been disclosed, *see Bagley*, 473 U.S. at 682, 105 S.Ct. 3375, the New York Court of Appeals has held that, where a specific *request* for exculpatory material was made, a new trial should be granted if there is a reasonable *possibility* that dis-

closure would have led to a different result. App. AA at 9 (citing *Vilardi*, 76 N.Y.2d 67, 556 N.Y.S.2d 518, 555 N.E.2d 915).

Although Justice Cornelius expressly found that there was no pretrial request for the criminal records of the prosecution's witnesses, App. AA at 10, a finding which I presume to be correct and which has not been rebutted by clear and convincing evidence, he went on to find that there was no reasonable *possibility* 'that disclosure of Ryan's criminal record would have resulted in a different outcome. *Id.* Thus, it appears that despite his finding that no request had been made, Justice Cornelius found that a new trial would not have been required even under *Vilardi*'s standard applicable to cases where exculpatory material was specifically requested, a standard more favorable to petitioner than the federal standard under *Bagley*. *See People v. Washington*, 180 Misc.2d 838, 842, 694 N.Y.S.2d 296 (Sup.Ct.1999) ("*Vilardi* represented a decision by the New York Court of Appeals to depart from the Federal standard of 'reasonable probability' to afford State defendants the increased protection of the 'reasonable possibility' test in situations where Brady material was specifically requested").

As noted, Justice Cornelius had presided over Berger's trial, and therefore was well positioned to assess the impact that evidence of Ryan's criminal record might have had on the jury's deliberations. He stated that "the evidence of guilt was overwhelming ..., including both circumstantial evidence and direct evidence in the form of testimony from other individuals concerning [Berger's] solicitations to have Mr. Siggelow killed and admissions concerning the eventual homicide." App. AA at 10–11. He also noted that the jury had been instructed that because Ryan was an accomplice, the jury could not convict Berger in the absence of corroborating evidence, and that defense counsel's use of Ryan's criminal record in the Vitarelli murder trial had been unavailing, as Berger was convicted in that case as well. *Id.* at 11.

I find no basis in the record upon which to question the accuracy of Justice Cornelius's conclusions in this regard. I also observe that Ryan's admission that he *was* an accomplice, as well as evidence presented to the jury of his "deal" with the prosecution whereby he agreed to testify against petitioner in exchange for being allowed to plead guilty to a lesser charge and receive a sentence of probation, were far more likely to have damaged his credibility in the eyes of the jury than two disorderly conduct convictions and an ancient Grand Larceny conviction. In addition, although petitioner lays great stress on the fact that the jury asked to have portions of Ryan's testimony read back during deliberations, they asked for several other witnesses' testimony to be read back as well. Thus, there is no reason to suspect that the jury's verdict hinged on their assessment of Ryan's credibility, or that their evaluation of his credibility hung so delicately in the balance that evidence of his criminal record would have produced a different outcome.

It should also be noted that Justice Cornelius identified and applied the correct principles of law as determined by the United States Supreme Court. Certainly nothing in his decision even approaches a legal conclusion that is "opposite" to or "substantially different" from Supreme Court precedent, nor is there any reason to conclude that Justice Cornelius "unreasonably applied" such precedent to the facts before him. *Williams*, —— U.S. at ————, 120 S.Ct. at 1519–21. In fact, to the extent that Justice Cornelius departed from Supreme Court precedent, he did so in a manner *favorable* to petitioner, by finding that Berger would not have been entitled to a new trial even under the more lenient "reasonable possibility" standard enunciated in *Vilardi*. In short, his decision was, as Justice O'Connor put it, a "run-of-the-mill" state court decision from

which petitioner is not entitled to relief under § 2254. *Id.* at 1520.

## IV. Lindsay's Statement

As noted earlier, the parties dispute whether petitioner has exhausted his state remedies with respect to his claim regarding Lindsay's statement. I find it unnecessary to reach that issue, however, as "it is obvious, based on established law and a relatively quick reading of the record, that the claim does not raise any issue upon which a habeas court may grant relief." *Norman,* 1999 WL 983869 *5. I therefore will dismiss it on the merits pursuant to my discretionary authority under § 2254(b).

As stated, this statement was made on September 23, 1986, over three months *after* Berger was convicted. As such, it simply does not constitute *Brady* material. Petitioner has submitted no authority for the proposition that a prosecutor has a duty to turn over evidence that does not yet exist. A review of Berger's own submissions on his § 440.10 motion and application for leave to appeal from Justice Cornelius's decision indicates that he sought to present Lindsay's statement more as "new evidence" under § 440.10(1)(g) than as evidence of a *Brady* violation. *See* App. EE at 2, 4. His attempt to transform this now into a federal constitutional claim under *Brady* therefore fails. *See Castillo v. United States,* No. 92 Civ. 3982, 1993 WL 51181 *8 (S.D.N.Y. Feb.23, 1993) (evidence that did not exist until after trial did not implicate *Brady or Giglio,* but rather was "newly discovered evidence" for purposes of § 2255 motion).

## IV. Leecy's Statement

Although petitioner's claim relating to Leecy's statement is clearly unexhausted, I again will exercise my discretion under § 2254(b) and dismiss it on the merits, for the reasons already stated. It is clear that this claim cannot supply a basis for relief here.

To the extent that Leecy's statements about what Ryan told him happened on the night of May 16 were inconsistent with Ryan's testimony at trial, they may have been used to impeach Ryan had they been in the possession of the defense. I will therefore assume that Leecy's statement qualifies as *Brady* material.

Having said that, however, Leecy's statement is far from exculpatory with respect to Berger, and it therefore cannot be deemed material in the sense that its use at trial would probably have produced a different result. If anything, Leecy's statements would have tended to be prejudicial to Berger.

Ryan's statements, as recounted by Leecy, indicated that Berger and Lindsay had telephoned "Ziggy" on the night of May 15 in an attempt to get Ziggy to leave his house. Berger and Lindsay then allegedly told Ryan that "Rick Lindsay was to fire bomb Ziggys car and that *Rick Berger* would shoot him." (Emphasis added). If this were not incriminatory enough, Leecy added that he had not told anyone about what Ryan said to him because he knew that *Berger* "wouldn't like that" and that Berger had previously pointed a gun at Leecy and said that "if [Leecy] fucked [Berger] over [Berger] would kill [Leecy]."

Weighed against the prejudicial impact of those statements is one contradiction between those statements and Ryan's trial testimony: Lindsay's presence in the former and his absence in the latter. Lindsay was not on trial, however. Berger was, and in both versions, Ryan identified him as the killer. While the inconsistency regarding Lindsay may have tended to cast some doubt on Ryan's credibility, it did not go to the heart of his testimony with respect to Berger, and there is no reasonable probability that, had the statement been turned over to the defense, the outcome of petitioner's trial would have been different. For that matter, given the portions of Leecy's statement that implicated Berger in Siggelow's murder, it is questionable whether defense counsel

would even have sought to use the statement, and if it had been used, it is highly unlikely that the jury would have reached a different verdict.

### CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is denied in its entirety, and the petition is dismissed. Further, because petitioner has failed to make a substantial showing of a denial of a constitutional right, I deny a certificate of appealability. 28 U.S.C. § 2253.

Also for the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a) and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.