People v Mignott (2025 NY Slip Op 51605(U))

[*1]

People v Mignott

2025 NY Slip Op 51605(U)

Decided on October 10, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 10, 2025

Criminal Court of the City of New York, New York County

The People of the State of New York, , Plaintiff,

against

Quinn Mignott, Defendant.

CR-010086-25NY

Alvin L. Bragg, Jr., District Attorney, New York County (Samantha Torrellas of counsel), for plaintiff.

Twyla Carter, The Legal Aid Society, New York City (Samantha Silverstein of counsel), for defendant.

Ilona B. Coleman, J.

In an omnibus motion, the defendant moves for several forms of relief. First, the defendant moves to dismiss the assault charges as facially insufficient for failing to sufficiently allege that the defendant's actions caused physical injury.

Next, the defendant moves to find the People's certificate of compliance and statement of readiness invalid and to dismiss his case pursuant to CPL §§ 30.30 (1) (b) and 170.30 (1) (e). Specifically, the defendant argues that the People failed to satisfy their discovery obligations under CPL § 245.20 in that they failed to timely provide police disciplinary materials, metadata for photographs, the People's communications with police witnesses, a prisoner arraignment database, and unredacted copies of several documents.

Finally, the defendant moves for an order suppressing statements noticed pursuant to CPL § 710.30 (1) (a); precluding or suppressing unnoticed statements; directing the People to comply with a demand for a bill of particulars; directing supplemental discovery procedures; and precluding the People from introducing evidence of prior bad acts at trial.

The People oppose.

I. Relevant Facts

The defendant is charged with violating PL §§ 120.00 (1), 240.30 (4), and related offenses on March 28, 2025. That day, the defendant was arrested, charged, and arraigned in criminal court. The case was adjourned to April 4, 2025.

On April 4, 2025, the defendant appeared in court. The People filed a superseding information in which the complainant alleges that she "observed the defendant push [her] to the ground, causing bruising and substantial pain to [her] elbow, hip, and knee." The defendant was arraigned on the superseding information, and the case was adjourned to May 12, 2025 for trial.

On May 12, 2025, the People were not ready for trial, and the case was adjourned to July 16, 2025 for trial. On June 11, 2025, the People filed a certificate of compliance (COC) and [*2]certificate of readiness for trial (COR). On July 16, 2025, the defense stated that they would be filing an omnibus motion, including a motion to dismiss, and the court set a motion schedule.

Thereafter, on July 28, 2025, defense counsel emailed the People notifying them of alleged defects in their discovery compliance. Specifically, defense counsel stated that the defense was entitled to: (1) IAB log attachments for police officers Remouns and Garcia; (2) disclosure advisory forms (DAFs) for police officers Garcia, Remouns, and Servius; (3) the name of and contact information for a security guard witness; (4) the ADA's communications with police officers regarding photographs of the complainant's injuries; (5) metadata for photographs; (6) the prisoner arraignment database, also known as the ZOLPA; (7) unredacted copies of several documents; and (8) a more legible copy of the command log. That same day, the People responded to defense counsel's email and provided the ZOLPA and photographs in a format that preserved the metadata. Over the next three weeks, the parties conferred about discovery via email. They resolved the issues of the security guard's information and the command log. Through the conferral process, the defense clarified that their objection to the People's redactions specifically concerned witnesses' biographical and contact information. Ultimately, the parties disagreed about the discoverability of law enforcement disciplinary records, metadata for photographs, the ADA's communications with police officers, and the ZOLPA, as well as the scope of the People's authority to redact otherwise discoverable documents without a protective order.

On September 8, 2025, the defense filed this motion. Defense counsel's affirmation states — albeit in perfunctory and conclusory language, and without attaching the conferral emails — that the parties conferred about the specific and particularized matters raised in the motion and that no resolution or accommodation could be reached.

On October 2, 2025, the People filed their opposition to the defendant's motion. In addition to disagreeing with the defense regarding the scope of the People's discovery obligations, the People's motion details the People's efforts to obtain and produce discoverable material. The People state that their discovery efforts began on March 31, 2025, when they requested body-worn camera (BWC) footage with metadata for seven officers. On April 1, 2025, the People requested 911 recordings and radio runs associated with the defendant's arrest, and on April 4, 2025, the People interviewed the complainant and began looking for surveillance video of the incident. On April 9, 2025, the People issued a subpoena duces tecum for surveillance footage. On May 9, 2025, the People provided initial discovery to the defense, including photographs of alleged injuries and surveillance video. They provided additional discovery on May 27, 2025 (911 calls and radio runs) and June 3, 2025 (NYPD paperwork, DA notes, and court paperwork). After following up on additional outstanding items, the People provided more discovery on June 9, 2025 (NYPD vouchers and finalized activity logs) and June 11, 2025 (the People's communications with the complainant and law enforcement disciplinary records). On June 11, 2025, the People filed a COC and COR.

II. Facial Sufficiency

The motion to dismiss the assault charges for facial insufficiency is denied. The defendant's sole argument is that the information does not sufficiently allege that the complainant suffered "physical injury," which is an element of PL §§ 120.00 (1) and (2). "Physical injury" is defined in Penal Law § 10.00 (9) as "impairment of physical condition or substantial pain." Though impossible to define precisely, "substantial pain" is pain that is "more than slight or trivial," but it need not be "severe or intense" (People v Chiddick, 8 NY3d 445, [*3]447 [2007]). Here, the information alleges that the defendant pushed the complainant to the ground, causing bruising and substantial pain. The fact that the complainant suffered bruising in three separate parts of her body is sufficient to support a conclusion that she experienced substantial pain (see People v Henderson, 92 NY2d 677, 680 [1999] [allegations of contusions, swelling, and substantial pain sufficient to allege physical injury]). The defendant's reliance on People v Mohamed, 58 Misc 3d 1205(A) (Crim Ct, NY County 2018), is misplaced. In that case, the complainant alleged only that she was pushed, resulting in redness and pain (id.). There was no allegation that the push caused her to fall to the ground or that she experienced any bruising (id.).

III. Validity of the People's COC

Next, the defendant argues that the People's COC was invalid. Under CPL § 245.50 (1), the People must affirm in their COC that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." When a defendant challenges a COC, this court will first examine the alleged discovery lapses individually to determine whether and to what extent the People failed to meet their discovery obligations. If the court finds any discovery violations, the court will then examine the violations in the context of "the totality of the [People's] efforts to comply with the provisions of [Article 245]" to determine whether the People nevertheless "exercised due diligence and acted in good faith" in discharging their duties (CPL 245.50 [5], [6]; see also People v Bay, 41 NY3d 200, 211 [2023]).

1. The People's Compliance with CPL § 245.20

CPL § 245.20 defines the discovery obligations the People must satisfy before filing a COC. The People must "disclose to the defendant" several categories of "material and information in the possession, custody or control of the prosecution" (CPL 245.20 [1]). The defendant specifically alleges that the People failed to timely provide several categories of material and information that the defendant claims are discoverable: (1) law enforcement disciplinary records; (2) the ADA's communications with police officers; (3) metadata for photographs; (4) the ZOLPA; and (5) redacted witness information.

The court will examine each of these alleged lapses in turn.

Law Enforcement Disciplinary Records

The defendant argues first that the People failed to produce all materials in their possession discoverable under CPL § 245.20 (1) (k) (iv). Specifically, the defendant argues that the People should have disclosed IAB log attachments and updated DAFs before filing a COC. In response, the People argue that the attachments have no tendency to impeach and are therefore not discoverable, and that they have provided the defense with the most recent DAFs for each officer.

As to the DAFs, the court credits the People's representation that they do not exist. DAFs are documents the Manhattan DA's Office formerly created to summarize officers' disciplinary histories in lieu of producing the original records. The DA's Office no longer creates or updates DAFs, so there is no reason to believe that more up-to-date versions of these documents exist.

As to the IAB log attachments, the defense has not met their initial burden of alleging sufficient facts from which this court could conclude that the attachments are reasonably likely to contain discoverable material. Despite having received the IAB logs from the People, the defense has not provided the court with any information about the alleged misconduct, the names [*4]of the IAB log attachments, or even whether any IAB logs contained substantiated or unsubstantiated allegations against the subject officers. However, the People have not objected to the defendant's motion on this basis, and their affirmation in opposition discusses the IAB matters in sufficient detail for the court to adjudicate the dispute.

CPL § 245.20 (1) (k) (iv) requires the disclosure of "[a]ll evidence and information that relate to the subject matter of the case . . . that tends to . . . impeach the credibility of a testifying prosecution witness." Generally, all police disciplinary matters that result in either "substantiated" or "unsubstantiated" findings will have some tendency to impeach (see People v Zachary L., 86 Misc 3d 1209[A] [Crim Ct, NY County 2025]). Where a disciplinary matter tends to impeach a testifying witness, the statute requires the disclosure of underlying records, not merely a summary (People v Coley, 240 AD3d 122, 135 [2025]). Here, the subject officers — PO Remouns and PO Garcia [FN1]
— each have two IAB logs with substantiated or unsubstantiated findings. For PO Garcia, logs 25-3121 and 24-18194 contain unsubstantiated allegations. For PO Remouns, logs 2023-1779 and 2018-5782 contain unsubstantiated allegations. The attachments to these logs are potentially discoverable under CPL § 245.20 (1) (k) (iv).

Because the attachments are at least potentially discoverable, the People should have obtained and reviewed them (see Zachary L., 86 Misc 3d 1209[A]). The People assert that the attachments are not in their actual possession and, essentially, that the burden of obtaining and disclosing the records from the NYPD is out of proportion to their value as impeachment evidence. There are two problems with this argument. First, there is nothing in CPL § 245.20 (1) conditioning discoverability on whether a document is worth the effort, at least when it is in the People's actual or constructive possession. Second, it is the People's responsibility "to ensure that a flow of information is maintained between the police . . . and [the DA's] office sufficient to place within [the People's] possession or control all material and information pertinent to the defendant and the offense or offenses charged, including, but not limited to, any evidence or information discoverable under paragraph (k) of subdivision one of section 245.20 of this article" (CPL 245.55 [1] [emphasis added]); see also People v Zuhdi A., 86 Misc 3d 1227[A] [Crim Ct, NY County 2025). However, the significance of the lapse is mitigated to some extent. The allegations contained in the logs, while carrying some tendency to impeach, are minor. Further, police credibility is unlikely to be a major issue in this case, which involves no significant police investigation. The defense has not articulated any reason to believe that these IAB log attachments would be important to their case.

However, the People are ORDERED to obtain all attachments for IAB logs 25-3121, 24-18194, 2023-1779, and 2018-5782 and to provide them to the court for an in camera review within two weeks of the date of this order.

ADA's Communications with Police Witnesses

The defense next argues that the People should have produced "communications depicting how the prosecution came to possess the photos of the complaining witness that were [*5]presumably taken by police officers," citing CPL § 245.20 (1) (e) and (h). In response, the People explain that the photographs were sent to the assigned ADA without any accompanying text. More broadly, the People argue that the only written communications between the assigned ADA and police witnesses were purely administrative and not "related to the subject matter of the case" (id.).

The court finds that the People have established that they satisfied their discovery obligations as to these communications. The defense is entitled to the photographs, which they received (CPL 245.20 [1] [h]). The court disagrees with the defendant's suggestion that the transmission of a photograph, without any accompanying text, is a "statement" within the meaning of CPL § 245.20 (1) (e). The defense has not articulated any other basis to conclude that this material itself is discoverable.

Metadata for Photographs

The defense argues that the People should have provided metadata for photographs of the complainant's injuries citing CPL § 245.20 (1) (e) and (h). The People disagree, arguing that the statute does not make any specific reference to metadata and that courts have disagreed about its discoverability.

The court agrees with the defense that metadata for digital photographs is discoverable, but on a different rationale. For digital photographs, metadata is information about when, how, and where the photograph was taken, and it is stored in the image file. The metadata can also reflect any edits made to the photograph. But metadata is not a "statement" within the meaning of CPL § 245.20 (1) (e), because the data is typically recorded automatically and is not "made by persons" who take the photographs. The applicability of CPL § 245.20 (1) (h) is a closer call. Does the term "photograph" refer only to the image captured in a digital photograph, or does it refer to the digital file in its entirety? The court need not resolve that subtle question of statutory interpretation, though, because metadata for photographs of the complainant's injuries is "electronically created . . . information . . . which relates to the subject matter of the charges against the defendant" (CPL 245.20 [1] [u] [i]; see also CPL 245.20 [1] [v]). Physical injury is an element of the charges against the defendant, and when the complainant's alleged injury had a certain appearance relates to the causation and severity of the injury.

Nevertheless, the People's failure to provide the original digital files for these photographs is not a significant factor in assessing the People's diligence. Metadata is not readily apparent to the typical file user, and it is likely that many lawyers are unaware of it. Metadata is also easily lost, for example if an image is printed and scanned or if a file is converted to a different format. Here, the assigned ADA immediately provided the defense with the original digital files, and there is no indication that the defense was prejudiced in any way.

ZOLPA

The defense argues that the ZOLPA is discoverable under CPL 245.20 (1) (e) and that the People erred in failing to disclose it. The People disagree that it is automatically discoverable, but they also state that the failure to provide it was a mere error that was immediately rectified. Indeed, the People's initial COC lists the ZOLPA as one of the documents provided to the defense. While the court agrees that the ZOLPA is discoverable, the inadvertent omission of this document — which contains minimal relevant information and arguably nothing relevant that is not contained in other NYPD documents — has no bearing on the People's overall diligence.

Redactions

Finally, the defendant argues that the People violated their discovery obligations in that they unilaterally redacted witness information beyond what is permitted under CPL § 245.20 (6). Specifically, the defendant objects to the People's redaction of the complainant's and police witnesses' physical addresses, dates of birth, and additional forms of contact information, which the defense asserts are discoverable under CPL § 245.20 (1) (c). The People disagree that this information is discoverable and argue that their redactions are specifically authorized under CPL § 245.20 (6).

One initial problem is that the parties are applying different versions of the statute. The People's COC was filed after the amended version of CPL § 245.20 (6) passed the legislature but before it went into effect on August 7, 2025. The defense is correct that the prior version of the statute still technically applied when the People's COC was filed. However, the People were already permitted to withhold "non-discoverable parts" of discoverable materials where good cause exists to withhold them (CPL 245.20 [6]). Here, there is no question that good cause existed to withhold such information as physical addresses or other forms of contact information because the legislature has now explicitly approved such redactions. Further, the defense has not articulated any plausible reason to believe that any of this information — physical addresses, personal cell phone numbers, dates of birth — is related to the subject matter of this case or otherwise discoverable. The redactions were therefore proper under CPL § 245.20 (5).

2. The People's Diligence and Reasonableness

The court will therefore consider the People's discovery violations in context of their overall diligence. Even where the People have not satisfied all of their discovery obligations, their COC will not be invalidated where they have "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material" (CPL 245.50 [6]; see also Bay, 41 NY3d at 211). In determining whether the People acted with due diligence, the court must consider:

[T]he efforts made by the prosecutor to comply with [their discovery obligations]; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.

(CPL § 245.50 [5] [a]; see also Bay, 41 NY3d at 212).

On balance, this court concludes that the People exercised due diligence prior to filing their COC. This is not an especially complex case, and the amount of discovery involved is standard for a case of this type. The allegations include only a single act against a single complainant. Still, the People made significant and prompt efforts to comply with their discovery obligations. The vast majority of discovery was disclosed prior to the People filing and serving their COC. While the People's failure to provide IAB logs is significant, it is not on its own determinative. The failure to provide metadata, while a lapse, is a minor factor in the court's analysis. The mistaken withholding of the ZOLPA has no bearing on the People's overall diligence. The People provided the ZOLPA and the metadata immediately upon notification [*6]from the defense. The belatedly disclosed documents are of limited significance and substantively duplicative of other materials, and the defendant has not articulated any way in which the People's belated provision of these items has hindered their ability to prepare for trial.

Overall, the court finds that the People "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed pursuant to [CPL § 245.20]" (CPL 245.50 [6]). The defendant's motion to deem the People's COC invalid is therefore denied.

IV. CPL § 30.30

In this case, in which the defendant is charged with an A misdemeanor and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). The parties agree that the 75 days between the defendant's arraignment on March 28, 2025 and the filing of the People's COC and COR on June 11, 2025 are chargeable to the People. Because the People's June 11 COC was valid, their COR was also valid, and the period from June 11 through the next court date is not charged to the People. The defense does not allege that any additional time is chargeable to the People.

The court finds that only 75 days are charged to the People, and the defendant's motion to dismiss is therefore denied.

V. Remaining Motions

Next, the defendant moves for an order suppressing noticed statements; precluding or suppressing unnoticed statements; directing the People to comply with a demand for a bill of particulars; directing supplemental discovery procedures; and precluding the People from introducing evidence of prior bad acts at trial.

The defendant's motion to suppress is granted to the extent that a Huntley/Dunaway hearing will be conducted before trial. The parties' allegations create factual disputes that must be resolved at an evidentiary hearing (see CPL 710.60 [4]).

The motion for a voluntariness hearing is denied (see CPL 710.60 [3]; CPL 710.20). The People are directed to notify the defendant as soon as practicable upon deciding to use any unnoticed statement for impeachment or rebuttal purposes, and the defendant is granted leave to renew their motion to suppress upon receiving such notification (see CPL 710.40 [2], [4]).

The motion for a bill of particulars is denied. The People filed a bill of particulars on June 11, 2025, as part of their automatic disclosure form. That document and the superseding information contain all the information the defendant has demanded that is authorized to be included in a bill of particulars (CPL 200.95 [5]).

The motion for a supplemental discovery order is denied. The People have demonstrated that they exercised due diligence and good faith in fulfilling their discovery obligations (see supra), and the defendant has provided no reason why supplemental discovery procedures would be appropriate here. Of course, the People have a continuing duty to disclose and are required as a matter of due process to investigate and turn over all materials favorable to the defense, especially where the defense has made a specific request (CPL 245.60, People v Vilardi, 76 NY2d 67, 77 [1990]). The defendant, however, has not demonstrated that court intervention is necessary to ensure the People's compliance with those obligations.

Finally, the motion to preclude evidence of prior bad acts is referred to the trial court. The People are directed to provide supplemental discovery to the defense as soon as practicable and at least fifteen calendar days prior to the first scheduled trial date (CPL 245.20 [3]; CPL 245.10 [1] [b]).

This constitutes the decision and order of this court.

Dated: October 10, 2025

New York, NY

Ilona B. Coleman, J.C.C.

Footnotes

Footnote 1:The defendant's motion only alleges discovery violations as to IAB log attachments for PO Remouns and PO Garcia. The defense has not advanced any argument that there are any discoverable IAB log attachments for PO Servius.